## A00A2420. KELLEHER et al. v. PAIN CARE OF GEORGIA, INC. et al.

(540 SE2d 705)

PHIPPS, Judge.

In 1995, Dr. Larry Empting treated Sharon Kelleher for chronic pain in facilities operated by Pain Care, Inc. (PCI) and Pain Care of Georgia, Inc. (PCGI). Kelleher died as a result of an overdose of controlled substances prescribed by Dr. Empting. As her surviving spouse and the administrator of her estate, Tommy Kelleher brought this medical malpractice action against Dr. Empting, PCI, and PCGI. Kelleher appeals the trial court's grant of summary judgment to PCI and PCGI. The question presented is whether PCI and PCGI can be held vicariously liable for any negligence of Dr. Empting in treating the decedent, on the ground that his acts were committed in the course of a joint venture. The trial court answered this question in the negative, as do we.

Dr. Empting is a psychiatrist and neurologist. PCI operates pain care centers in Macon and Atlanta which provide specialized programs for the diagnosis and treatment of acute, post-acute, and chronic pain. PCGI is a wholly owned subsidiary of PCI.

In 1992, Dr. Empting and PCI entered into "consulting and development," "chief medical officer," and "billing and collection" agreements. The billing and collection agreement was amended in 1995.

In the consulting and development agreement, Dr. Empting agreed to assist PCI in the development of its pain care centers and to provide medical consultation services. His duties included assisting in the development of protocols for the diagnosis and treatment of chronic pain patients, providing educational services to other physicians in the pain care centers, and rendering administrative services customarily expected of a medical consultant. Under the chief medical officer agreement, Dr. Empting became PCI's chief medical officer and assumed duties such as assisting PCI in recruiting physicians to practice in PCI's pain care centers and ensuring that such centers were appropriately staffed. PCI retained final authority to approve all policies, procedures, and services at its centers. Under these agreements, Dr. Empting was paid an hourly fee for services rendered. Both agreements recognized that Dr. Empting would continue to engage in the private practice of medicine, which he conducted at certain of PCI's and PCGI's pain care centers. Under the billing and collection agreement, Dr. Empting retained PCI to perform billing, collection, and other support services for his private medical practice. As compensation for these services, PCI retained 35 percent of fees it collected.

The consulting and development and chief medical officer agree-

ments state that Dr. Empting is an independent contractor performing services for PCI. Similarly, the billing and collection agreement states that PCI is an independent contractor performing services for Dr. Empting.

Dr. Empting and PCI amended the billing and collection agreement in 1995 partly as a result of expenses incurred by PCI in establishing the pain care center at which decedent was treated in Atlanta. The amended agreement provided that collections from Dr. Empting's medical practice at all of the pain care centers, as well as the "net" amount collected from other neurologists practicing at the Atlanta center, would be applied first to reimburse PCI for all operating expenses of the center. If, however, these collections and certain other sums exceeded the operating expenses, the excess would be shared 25 percent to Empting and 75 percent to PCI.

The trial court concluded that Dr. Empting was not engaged in a joint venture with PCI or PCGI, because there was no right of mutual control and no evidence of an agreement to share in the centers' profits and losses. Therefore, the court ruled that PCI and PCGI cannot be held vicariously liable for Dr. Empting's alleged negligent acts.

"A joint venture 'arises where two or more parties combine their property or labor, or both, in a joint undertaking for profit, with rights of mutual control.' "[1] "There must be not only a joint interest in the objects and purposes of the undertaking, but also a right, express or implied of each member of the joint venture to direct and control the conduct of the other. [Cits.]"[2] Thus, it is the "right" of mutual control, rather than its actual exercise, which must be shown.[3] This right of mutual control is a "crucial element" to establishment of a joint venture.[4] Similarly, it has been held in medical malpractice cases that a hospital generally cannot be held vicariously liable for the negligent performance of professional services by a staff physician, unless it undertook to control the way and manner of treating his patients.[5]

Here, the agreements between the parties show that PCI had no right to control Dr. Empting in the treatment of his patients. And Dr. Empting, as well as PCI's and PCGI's president, have given uncon-

---

[1] (Footnote omitted.) *Rossi v. Oxley*, 269 Ga. 82 (1) (495 SE2d 39) (1998); see *Pope v. Goodgame*, 223 Ga. App. 672, 674 (2) (c) (478 SE2d 636) (1996).

[2] *Security Dev. &c. Co. v. Williamson*, 112 Ga. App. 524, 525 (1) (145 SE2d 581) (1965).

[3] See *City of Eatonton v. Few*, 189 Ga. App. 687, 690 (2) (377 SE2d 504) (1988) (finding authorized that swimming pool jointly operated and maintained by city and county was a joint enterprise, notwithstanding parties' determination between themselves how control over the facility would be exercised).

[4] See *Rossi v. Oxley*, supra at 82-83; *Gilleland & Son, Inc. v. Misener Marine Constr.*, 173 Ga. App. 713, 714 (327 SE2d 829) (1985).

[5] *Hodges v. Doctors Hosp.*, 141 Ga. App. 649, 650 (2) (234 SE2d 116) (1977).

tradicted testimony that no such control was in fact exercised. Because PCI and PCGI have shown by reference to evidence of record that there is no evidence sufficient to create a jury issue on at least one essential element of Kelleher's case, the trial court did not err in granting their motion for summary judgment.[6]

*Judgment affirmed. Johnson, C. J., and Smith, P. J., concur.*

DECIDED NOVEMBER 1, 2000.

*W. McMillan Walker*, for appellants.
*Alston & Bird, Clifton M. Iler, Laura L. Owens*, for appellees.

---

[6] See, e.g., *Caven v. Warehouse Home Furnishings Distrib.*, 209 Ga. App. 706 (434 SE2d 532) (1993).