**FOURTH DIVISION**
**DILLARD, C. J.,**
**RAY, P. J., and SELF, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**October 31, 2017**

# In the Court of Appeals of Georgia

A17A1266. LAFONTAINE et al. v. ALEXANDER et al.

A17A1267. ALEXANDER et al. v. LAFONTAINE et al.

RAY, Presiding Judge.

These cases arise from the development by Thomas Watley of land now known as the Hickory Hill subdivision in Harris County. Watley was assisted by Mark Alexander (collectively, the "Defendants") in clearing the land and developing the property.

Robert and Diane Lafontaine purchased a lot in the Hickory Hill subdivision. Claiming that utility easements were not properly placed on their property, the Lafontaines sued the Defendants for, inter alia, fraudulent concealment of negligent construction, negligent construction, maintaining an abatable nuisance, and negligent construction of the utility lines. In May 2011, the trial court granted partial summary

judgment to Defendants on all pending claims, except the claim of negligent construction related to the placement of the utility lines outside of any recorded easement.

Nearly three years later, the Lafontaines filed an amended complaint and a motion to vacate the May 2011 order. In 2016, the trial court denied the Lafontaines' motion to vacate the 2011 summary judgment order and granted the Defendants' second motion for summary judgment as to all claims, again except for the negligent construction claim related to negligent placement of the utilities.

The parties filed cross-appeals from the second summary judgment order. In A16A1266, the Lafontaines argue that the trial court erred by granting summary judgment in favor of the Defendants on fraud, negligent misrepresentation, breach of warranty of title and continuing nuisance. They also claim that the trial court erred in denying their motion to vacate the May 2011 summary judgment order. As set forth herein below, we affirm in part and reverse in part. In A17A1267, Defendants argue that the trial court erred by failing to grant summary judgment to Alexander on all claims because the Lafontaines failed to establish evidence of a joint venture between Alexander and Whatley in the Hickory Hill subdivision. As we explain herein below, we reverse the trial court's denial of summary judgment to Alexander.

On appeal from a grant of summary judgment, we conduct a de novo review of the evidence to determine if there exists a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, entitle the movant to judgment as a matter of law. (Citation omitted.) *Capital Color Printing, Inc. v. Ahern*, 291 Ga. App. 101, 102 (661 SE2d 578) (2008).

The evidence shows that in 2011 that Watley was the sole owner of the unimproved land (that later became the Hickory Hill subdivision) and that he decided to redevelop the land for resale. In 2002, Watley asked his friend, Alexander, for advice on how to develop the property into four lots. In clearing and developing the land, ditches were dug for the utilities.

A survey of Hickory Hill was performed which split the property into four tracts of land and shows a sixty-foot perpetual easement beginning at Warm Springs Road and ending at a cul-de-sac. Pursuant to the Subdivision Regulations of Harris County, Watley submitted a preliminary plat, followed by a Final Plat on May 2, 2002. The Final Plat of the Hickory Hill subdivision, as submitted by Watley, was approved by the Planning Commission of Harris County on May 15, 2002. According to Harris County Manager, Danny Bridges, although the planning commission approved the Final Plat in 2002, the plat did not comply with the county subdivision

3

regulations because it made no provision for utilities or easements along the appropriate lot lines for utility lines and underground mains or cables.[1]

Even though Watley signed and submitted the survey of Hickory Hill to the Harris County Planning Commission as the Final Plat of the subdivision, he testified that he had not personally ascertained whether the ditch containing the utilities coincided with the Final Plat. Watley deposed that he never read the county subdivision regulations.

The Lafontaines purchased Tract Four in the Hickory Hill subdivision as evidenced by a Warranty Deed dated April 14, 2006. In the summer of 2007, they began construction of their home. After breaking ground, their builder discovered that the water meter for Tract Four was actually installed on Tract One. The Lafontaines immediately stopped construction and contacted their attorneys. Watley then provided a new survey of Hickory Hill subdivision, which reflected a new ten-foot easement and represented that the water lines were physically located inside that easement. Watley told the parties that the water line ran within the ten-foot easement and that all other utilities were buried underground following the roadway easement. The

---

[1] The Final Plat does show a "perpetual easement" along the road, but without any explanation of the specific purpose or dimensions of this easement.

parties then executed a Second Amended Joint Reciprocal Easement Agreement (the

"Reciprocal Easement Agreement") on October 16, 2006. This new survey was filed

and recorded with the Clerk of Harris County Superior Court.

The Lafontaines later discovered that the utilities were not physically located

inside the perpetual easement reflected on the Final Plat or within the ten-foot

easement reflected on the Reciprocal Easement Agreement. Claiming that the utilities

were not properly placed on their property, the Lafontaines sued the Defendants, inter

alia, for fraudulent concealment of negligent construction, continuing nuisance, and

negligent construction of the gas supply line and other utilities.[2] In May 2011, the

trial court granted the Defendants' motion for summary judgment on all pending

claims, except for the claim of negligent construction concerning the placement of the

utilities on the property.[3] The Lafontaines did not appeal the May 2011 ruling. Rather,

---

[2] The Lafontaines also named Harris County as a defendant in the action, but did not appeal from the trial court's grant of summary judgment to the county.

[3] The trial court granted the Defendants' motion for summary judgment on all pending claims on April 8, 2011. The Lafontaines then filed a motion for reconsideration of that order, arguing that summary judgment on their negligent construction claim was based on an improper ruling on the applicable statute of limitations. On May 4, 2011, the trial court vacated its order of April 8, 2011, to address the statute of limitations issue. On May 11, 2011, the trial court granted partial summary judgment to the Defendants' as to all of the Lafontaines' claims, except their claim for negligent construction concerning the placement of the utilities

on November 1, 2013, they filed a Third Amended Complaint.[4] The Third Amended Complaint, inter alia, reasserted identical claims for which summary judgment was granted in May 2011, including "fraudulent concealment of negligent construction and development of Hickory Hill subdivision," "negligent construction and development of Hickory Hill subdivision" as it relates to the construction of the roads for ingress and egress, and "continuing nuisance to private property." The Third Amended Complaint also asserted causes of action against Watley for suppression of material facts, negligent misrepresentation, and breach of warranty of title, and for estoppel against both Defendants.

On June 30, 2016, Defendants filed a second motion for summary judgment seeking dismissal of all of the Lafontaines' claims, including those which were previously dismissed on May 11, 2011. The trial court heard oral argument on the summary judgment motion on August 5, 2016. Subsequent to oral argument and five years after the trial court's May 2011 order, the Lafontaines then filed a motion to vacate the May 2011 summary judgment order. On September 21, 2016, the trial court

on the property.

[4] The Lafontaines filed a Second Amended Complaint against Harris County for inverse condemnation.

6

denied the Lafontaines' motion to vacate the May 2011 summary judgment order and granted Defendants' summary judgment motion on all claims, except for the negligent construction claim related to the placement of the utilities.

1. As an initial matter, we address whether the trial court's May 2011 summary judgment order foreclosed the claims asserted by the Lafontaines in their third amended complaint or consideration of evidence filed after the May 2011 summary judgment was entered.

It is true that "[s]ummary judgment orders which do not dispose of the entire case are considered interlocutory and remain within the breast of the court until final judgment is entered. They are subject to revision at any time before final judgment unless the court issues an order 'upon express direction' under OCGA § 9-11-54 (b)." (Citation and punctuation omitted.) *Canoeside Props., Inc. v. Livsey*, 277 Ga. 425, 427 (1) (589 SE2d 116) (2003). Although OCGA § 9-11-54 (b) authorizes a trial court to revise an interlocutory order, the trial court is not *required* to grant a motion to vacate or a motion for reconsideration in every circumstance. See OCGA § 9-11-60 (h). However, the trial court's failure to vacate the May 2011 summary judgment order does not foreclosure our consideration of the trial court's rulings in both

summary judgment orders. See OCGA § 5-6-34 (d) (generally, once a case is on appeal, all rulings theretofore made by the trial court are subject to review).

Although the Lafontaines relied upon affidavits filed subsequent to the first motion for summary judgment in their response brief to Defendants' second summary judgment motion,[5] the trial court could not rely upon such evidence when considering the Lafontaines' motion to vacate the summary judgment order of May 2011. It would be improper for the trial court to have considered new facts presented more than five years after a grant of summary judgment. See, e. g., *Glenn v. Maddux*, 149 Ga. App. 158, 159 (2) (253 SE2d 835) (1979) ("Affidavits filed after the order granting partial summary judgment was entered were properly not considered by the trial court, and issues raised therein will not now be reviewed by this [C]ourt"). If the Lafontaines determined that they needed additional evidence to refute the Defendants' first summary judgment motion, they could have asked the trial court for additional time to conduct discovery or obtain affidavits at that time. See OCGA § 9-11-56 (f).

No pre-trial order has been entered in this case. Accordingly, the Lafontaines had the right to file their third amended complaint. See OCGA § 9-11-15 (a) ("A

---

[5] The Lafontaines' relied upon affidavits filed on August 1, 2016, to support their brief in response to Defendants' second motion for summary judgement.

party may amend his pleading as a matter of course and without leave of court at any time before the entry of a pretrial order"). However, they did not have the right to re-litigate and provide additional evidence for identical causes of action that had been decided against them on summary judgment. OCGA § 9-11-15 (a) "allows a party to amend his pleading as a matter of course . . . before the entry of a pre-trial order; however, because summary judgment is an adjudication on the merits, once entered, a party is not free to amend its pleadings or to utilize a new defense." (Footnote omitted.) *Falanga v. Kirschner & Venker, P. C.*, 298 Ga. App. 672, 676 (2) (680 SE2d 419) (2009). This Court has held that no party "is permitted to stand his case before the court on some of its legs, and if it falls, set it up again on the rest in a subsequent proceeding, and thus evade the bar of the former judgment." (Punctuation and footnote omitted.) Id.

Accordingly, the trial court properly refused to consider evidence filed in 2016 when considering causes of action that were resolved by the May 2011 summary judgment order and raised again in the Third Amended Complaint. Those identical causes of action include: fraudulent concealment of negligent construction, negligent construction of all utilities except the gas line, and continuing nuisance.

9

2. The Lafontaines contend that the trial court erred in granting summary judgment to the Defendants on their claim for fraud, arguing that Watley's reckless, if not knowingly false, representations regarding the placement of the utilities are sufficient to sustain an action for fraud. We agree that there is sufficient evidence such that the jury should decide on the disposition of this claim.

Under Georgia law, "[w]ilfull representation of a material fact, made to induce the other to act, upon which such person acts to his injury, will give him a right of action." OCGA § 51-6-2 (a). "Although knowledge is an essential element of this tort, recklessness can rise to the level of knowledge. A fraudulent or reckless representation of facts as true when they are not, if intended to deceive, is equivalent to a knowledge of their falsehood even if the party making the representation does not know that such facts are false." (Citation and punctuation omitted.) *Plane v. Uniforce MIS Svcs. of Ga., Inc.*, 223 Ga. App. 731, 734 (2) (479 SE2d 18) (1996). Accord *Stinson v. Artistic Pools, Inc.*, 236 Ga. App. 768, 769 (2) (513 SE2d 510) (1999) ("Reckless representation of fraud without knowledge is actionable as a species of fraud without scienter") (citation omitted).

In the instant case, Watley signed the Final Plat, which included a statement that he "certified that this plat is the true and correct and was prepared from an actual

10

survey of the property by me or under my supervision; that all monuments shown hereon actually exist or are correctly shown, and that all engineering requirements of the land subdivision regulations of Harris County, Georgia, have been fully complied with."[6] The plat also contained the statement "this plat is a correct representation of the land platted and has been prepared in conformity with the minimum standards and requirements of law." Although Watley deposed that he was not personally familiar with the location of the utilities or the pertinent subdivision regulations, a jury could conclude that his act of signing the Final Plat without checking to make sure that the subdivision complied with regulations of Harris County, including the proper placement of utility lines, was a reckless representation without knowledge. *Stinson*, supra ("even if [the defendants] did not intend to deceive [the plaintiff] by their inaccurate representations that steel rebar and concrete piers had been installed, not knowing whether these representations may be considered reckless representation of facts and equivalent to actual knowledge of the faulty representations") (citation omitted). Further, "[f]raud itself is subtle, and slight circumstances may be sufficient

---

[6] We also note that Watley signed the Reciprocal Easement Agreement after the Lafontaines discovered the problems with the water line and made other untrue allegations about the location of the utilities at that time.

11

to carry conviction of its existence." (Citations omitted.) *Rose Mill Homes, Inc. v. Michel*, 155 Ga. App. 808, 809 (2) (273 SE2d 211) (1980).

Although the trial court's May 2011 summary judgment order found that Watley did not act with intent to induce the Lafontaines to purchase the properties or that the Lafontaines reasonably relied upon such assertions, it only considered Watley's actions after the Lafontaine's purchased their lot. However, the act of filing a plat with the county constitutes what could be interpreted by the jury as an act intended to induce parties to purchase the subdivided lots, particularly if the Lafontaines or their representative inspected the plat during the course of purchasing the property.

Accordingly, we reverse the trial court's grant of summary judgment to the Defendants on the Lafontaine's claim of fraud.

3. The Lafontaines argue that the trial court erred in granting the Defendants' motion for summary judgment on their claim for negligent misrepresentation. The elements of a negligent misrepresentation claim are "(1) a false representation of omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages." (Citation and punctuation omitted.) *Home Depot U. S.A., Inc. v. Wabash Nat. Corp.*, 314 Ga.

App. 360, 367 (3) (2012). As noted in Division 2, supra, Watley's act of filing the Final Plat stating that it complied with the county's regulations, even though he was personally unaware of whether those regulations had been complied with, constitutes a false representation of a material fact. Accordingly, we vacate the trial court's grant of summary judgment as to negligent misrepresentation and remand for further consideration in light of this opinion.

4. The Lafontaines argue that the trial court erred in granting the Defendants' motion for summary judgment on their claim for breach of warranty of title. The third amended complaint asserts a new claim against Watley for breach of warranty of title, but fails to state the nature of Watley's breach.

OCGA § 44-5-62 provides that "[a] general warranty of title against the claims of all persons includes covenants of a right to sell, of quiet enjoyment, and of freedom from encumbrances." This Court has held that "[i]n an action for the breach of a covenant of warranty of title[,] the burden is upon the plaintiff to show eviction under a paramount outstanding title. The rule seems to be everywhere recognized that to constitute a breach of the covenant of warranty . . . , an eviction or equivalent disturbance by title paramount must occur, and that the mere existence of an

13

outstanding paramount title will not constitute a breach." (Citations and punctuation omitted.) *Hitchcock v. Tollison*, 213 Ga. App. 477, 479 (2) (444 SE2d 84 (1994).

In the present case, the record is void of any evidence of the existence of a paramount title to the Lafontaines' land, or an eviction or equivalent disturbance as a result of a paramount title.[7] The Lafontaines have lived continuously in their home in Hickory Hill since 2008. Absent such evidence, any claim for breach of warranty of title must fail. Id.

5. The Lafontaines argue that the trial court erred in granting summary judgment to the Defendants on the continuing nuisance claim. The Lafontaines argue that the Defendants' failure to locate the utilities supplying their property within established easements creates a nuisance because it effects their ability to sell their property. We find no merit to this argument and affirm the trial court's grant of summary judgment on this claim. See generally *Sumitomo Corp. of America v. Deal*, 256 Ga. App. 703 (569 Ga. App. 608) (2002). See also *Baumann v. Snider*, 245 Ga. App. 526, 527 (1), n. 4 (532 SE2d 468) (2000).

---

[7] Nor did the Lafontaines provide evidence of a valid encumbrance on their land or that they had discharged said encumbrance. Id. at 480.

6. In A17A1267, Defendants argue that the undisputed evidence in the record fails to show that a joint venture existed between Alexander and Watley and, therefore, that the trial court should have granted summary judgment to Alexander. We agree.[8]

Georgia appellate courts have "acknowledged . . . that the 'negligent construction' exception to the application of caveat emptor has been limited to builders/sellers." (Citation omitted.) *Cendant Mobility Fin. Corp. v. Asuamah*, 285 Ga. 818, 820-821 (684 SE2d 617) (2009). It is undisputed that Watley was the owner of the Hickory Hill subdivision when the lot was sold to the Lafontaines and that Alexander had no ownership interest in the property. The Lafontaines, however,

---

[8] Normally, "where a trial court does not rule on an issue, it remains outside the jurisdiction of this Court and we cannot consider it, especially if the issue is one of summary judgment." (Punctuation and footnote omitted.) *Kirkland v. Earth Fare, Inc.*, 289 Ga. App. 819, 821 (1) (658 SE2d 433) (2008). See also *Harden v. Burdette*, 204 Ga. App. 733, 735 (3) (420 SE2d 626) (1992) ("Issues on summary judgment not passed on by the trial court will not be considered on appeal") (citation omitted). However, although the trial court did not rule on the issue of whether Defendants were in a joint venture before it ruled on the motion for summary judgment, it did deny their motion for summary judgment on the claim for negligent construction as it pertains to the utilities at Hickory Hill. Accordingly, we assume the trial court implicitly denied Defendants' motion for summary judgment on the grounds that Alexander was not in a joint venture with Watley. See *Coffee Butler Service, Inc. v. Sacha*, 208 Ga. App. 4, 6 (2) (430 SE2d 149) (1993).

brought their negligent construction claim not only against the seller, Watley, but also against Alexander under a joint venture theory.

"A joint venture arises where two or more parties combine their property or labor, or both, in a joint undertaking for profit, with rights of mutual control." (Punctuation and footnote omitted.) *Kelleher v. Pain Care of Ga., Inc.*, 246 Ga. App. 619, 620 (540 SE2d 705) (2000). "The right to exercise mutual control is a crucial part of a joint venture." (Citation omitted.) *Williams v. Chick-fil-A, Inc.*, 274 Ga. App. 169, 170 (617 SE2d 153) (2005). One party can become liable for the negligence of another under a joint venture theory only if that party had the "right to direct and control the conduct of the other party in the activity causing the injury. The mere existence of a business interdependency does not create a joint venture." (Punctuation and footnotes omitted.) *Gateway Atlanta Apts., Inc. v. Harris*, 290 Ga. App. 772, 778 (2) (b) (660 SE2d 750) (2008).

The evidence shows that Watley hired Alexander to clear some of the unimproved land for development. Alexander and his crews charged Watley on an hourly per-tractor basis to take down trees, perform grading work and other tasks to prepare the land for sale. Alexander also contacted various utility companies on Watley's behalf about running underground utilities through the Hickory Hill

16

property. Alexander deposed that he did the work, in part, because he hoped that Watley would encourage the purchasers of the lots to use Alexander as a builder when they built upon the property. However, there was no formal agreement that Alexander had an interest in the property or the subdivision development beyond his duties as a contractor.

In the instant case, the Lafontaines have provided no evidence that Alexander and Watley entered into a joint venture. It is undisputed that Alexander did not have any share in the profits or losses associated with the sale of lots the Hickory Hill subdivision. Although the Lafontaines argue that Alexander hoped to profit from his efforts by being selected by one of the purchasers to build their house, they have pointed to no evidence that Watley and Alexander entered into an agreement of that nature. In fact, Alexander was not hired to build any of the homes constructed on Hickory Hill lots sold by Watley.

Further, the Lafontaines have not pointed to any evidence that Alexander had the right to exercise mutual control over the development of the property. Rather, the evidence shows that Alexander was Watley's paid contractor. The fact that Alexander acted as a contractor for Watley by clearing trees, grading land, and assisting in contacting the utility companies did not grant Alexander the right of mutual control

17

over the project. Alexander was compensated by Watley for his services and did as Watley instructed. Alexander deposed that he worked with a surveyor hired by Watley to figure out the best way to run the utility lines, but that the actual work was sub-contracted out to another company. He further deposed that although he sent a letter to Harris County requesting a variance in his capacity as a developer, he did so only to complete a task directed by Watley when the two of them realized that a narrower road than had originally been planned for would be more attractive.

The Lafontaines cite to *City of Eatonton v. Few*, 189 Ga. App. 687 (377 SE2d 504) (1988) and *Seckinger & Co. v. Foreman*, 252 Ga. 540, 541 (314 SE2d 891) (1984) for the proposition that the rule that a joint venture does not require an undertaking for profit and with mutual control. However, these cases involve exceptions to the rule which are not applicable in this case. *Few*, supra at 689-690 (2), involved a wrongful death claim against a municipality and county arising from the maintenance of a community pool. The pool was owned and maintained by the municipality, but the county managed the day-to-day operations. Id. at 690 (2). The State Constitution specifically authorized such a relationship for the provision of "joint services." (Citation, punctuation, and emphasis omitted.) Id. In *Seckinger,* supra at 541 (1), our Supreme Court found that when two companies entered into a

contract designated as a "joint venture," the terminology used in the contract would govern their relationship even if they did not share profit or mutual control over the endeavor. The instant case does not fall under these exceptions; there is no applicable Constitutional provision allowing for a joint venture between Alexander and Watley, and there is no contract between them that identifies their relationship as a joint venture.

Because the Lafontaines failed to direct the trial court or this Court to any evidence that Alexander directed and controlled Watley's conduct or exercised mutual control over the sale and/or development of Hickory Hill, the denial of Alexander's motion for summary judgment was in error. See *Charter Peachford Behavioral Health System, Inc. v. Kohout*, 233 Ga. App. 452, 461 (e) (504 SE2d 514) (1998) (Without "a joint right of control and the sharing of profits and losses, a joint venture cannot legally exist between health care providers") (citation omitted).

7. For the first time on appeal, the Lafontaines claim that Alexander is a joint tortfeasor with independent liability. As this issue was not raised or addressed below, we decline to consider this argument.

> The purpose behind summary judgment is to dispose of litigation expeditiously and avoid useless time and expense to go through a jury

19

trial. This purpose is thwarted when a party may withhold meritorious legal arguments until appeal. Allowing a party to raise new arguments also ignores the duties and responsibilities placed on the parties by OCGA § 9-11-56. Each party has a duty to present his best case on a motion for summary judgment. This Court has specifically held that, in responding to a motion for summary judgment, plaintiffs have a statutory duty to produce whatever viable theory of recovery they might have or run the risk of an adjudication on the merits of the case.

(Punctuation and footnotes omitted.) *Pfeiffer v. Ga. Dept. of Transportation*, 275 Ga. 827, 828 (2) (573 SE2d 389) (2002). Further, this Court is a court for the "correction of errors of law committed in the trial court." (Footnote omitted.) Id at 829 (2). Thus, absent special circumstances, this Court "need not consider arguments raised for the first time on appeal." (Footnote omitted.) Id.

*Judgment affirmed in part, reversed in part, and case remanded in case A17A1266. Judgment reversed in case A17A1267. Dillard, C. J., and Self, J., concur.*