**WHOLE COURT**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 21, 2013**

# In the Court of Appeals of Georgia

A12A1988. HANSEN v. DOAN.

MCMILLIAN, Judge.

This appeal arises out of defendant/appellee Laura Doan's successful attempt to enforce a settlement agreement against plaintiff/appellant Lawrence Hansen in this personal injury action.

The record discloses the following facts relevant to this appeal: On June 22, 2011, Hansen sustained severe injuries when the motorcycle on which he was riding was struck by the automobile Doan was driving. On July 1, 2011, Hansen's attorney, Keith Bodoh, faxed a letter to Liberty Mutual Fire Insurance Company (Liberty Mutual), Doan's automobile liability insurance carrier, stating that he represented Hansen and that Hansen's injuries were "serious;" this letter also included a policy limits disclosure request pursuant to OCGA § 33-3-28.

Less than a week later, Brenda O'Rear, a senior claims specialist with Liberty Mutual, telephoned Bodoh and informed him that Doan had $25,000 in liability coverage. According to Bodoh's affidavit, he told O'Rear that Hansen had suffered multiple fractures during the collision, requiring hospitalization and surgery, and O'Rear responded by stating that she would need "very few" medical documents before she could tender the policy limits.

On July 11, 2011, Bodoh sent a time-limited settlement demand letter to Liberty Mutual's registered agent via overnight mail containing the following settlement offer:

> Lawrence Hansen . . . will sign a Limited Release with Liberty Mutual . . . within the meaning of OCGA § 33-24.41.1 for the full $25,000 in liability insurance limits. This will allow Mr. Hansen to avail himself of the $25,000 in underinsured motorist insurance coverage he has available . . . . To be accepted, the OCGA § 33-24-41.1 Limited Release in favor of Laura Henkleman Doan and Liberty Mutual . . . only (with no indemnity language) and the $25,000 check payable to only Lawrence Hansen and [Bodoh's law firm] must be received within twelve (12) days of you receiving this demand. The offer is automatically withdrawn if these conditions are not complied with within the time limit.

On July 21, O'Rear sent Bodoh a letter, which did not specifically refer to the settlement offer, requesting an interview with Hansen and medical and wage authorization forms and information. The next day O'Rear telephoned Bodoh and recorded their conversation and a recording of that conversation was played for the trial court. The transcript of the conversation reveals the following exchange:

O'Rear: I have requested that you send some information into me which you did which would allow me to tender our limits on this case. [As] you recall we have a $25,000 limit and I believe what you sent me is obviously sufficient enough for me to go ahead and pay that limit. . . . I'm looking at your letter here and uh you wanted a limited release which is . . . obviously not a problem. Do you have one that you want to use a specific release?

Bodoh: Um no huh-uh.

O'Rear: Okay uh let me see if I have one.

Bodoh: Um can you just um well I um I guess you can just fax me stuff you know.

O'Rear: Uh you mean . . . like a limited release. I only have one . . .

Bodoh: [Inaudible] told him she only had one release

O'Rear: It may have language in there that you don't like.

Bodoh: Do you have my fax number.

3

O'Rear: I do.

. . .

Bodoh: Probably the best way to deal with stuff.

O'Rear: Yeah let's see here because uh I believe the only one I have ---

Bodoh: (Inaudible) I mean I hate to cut things short. I just have someone that [is] in my office.

[O'Rear apologizes]

O'Rear: [Just today w]as my last day to respond and I really didn't want to ---

Bodoh: I (inaudible) sat down in my office and I really can't talk right now.

O'Rear: (Laughs) Okay well can I . . . call you back.

Bodoh: We'll talk later ok.

Later that day O'Rear faxed Bodoh a letter confirming their conversation; that letter provided in pertinent part that "we are agreeing to pay our policy limits of $25,000 to your client. We will also agree to a limited release. You indicated that you did not have a specific release you wanted to use. I am attaching the only limited release that I have which we can tailor to fit your needs. If you would please look it over and make your suggestions or any changes you wish to make then we can iron out the details. Your demand letter also stated the check had to be received in your

4

office within 12 days of receiving the demand [and based on when we received the letter] 12 days would be 07/25/11. I would like to iron out the details of the settlement today so we can meet your deadlines unless you will agree to let us mail the check to your office. Please get back to me at your earliest convenience so that we may conclude this matter." Contrary to Bodoh's demand, the release that was enclosed with the letter contained indemnification language.

O'Rear made several unsuccessful attempts to contact Bodoh over the next several days, and then sent him a letter, dated July 25, 2011, notifying him of her intent to "comply with your demand" by having the check delivered to his office that day. She also stated that "we still need to work out the details of the limited release" and requested that he contact her so they could "conclude this portion of the claim . . . ." She also sent Bodoh another letter that same day, confirming delivery of the check and once again asking him to contact her so they could "get the release out of the way. . . ."

On July 26, 2011, Bodoh notified Liberty Mutual that the settlement offer had been "automatically withdrawn" because Liberty Mutual did not accept the offer within the specified time and because the limited liability release Liberty Mutual "proferred" contained indemnification language. Hansen filed this personal injury

5

action against Doan several days later, and Doan subsequently answered and filed a motion to enforce the purported settlement agreement. Following a hearing, the trial court granted Doan's motion, and Hansen timely filed this appeal. Having considered Hansen's contentions on appeal, we now affirm.

Before turning to Hansen's specific enumerations of error, we take note of these overarching principles:

> In reviewing the trial court's order on both a motion to enforce a settlement agreement and a motion for summary judgment, we apply a de novo standard of review and . . . view the evidence in a light most favorable to the nonmoving party.[1] Moreover, well-established principles guide our inquiry into whether the parties entered into a settlement agreement. In order to prevent litigation, (c)ompromises of doubtful rights are upheld by general policy . . . . At the same time, courts are certainly limited to those terms upon which the parties themselves have mutually agreed. Indeed, apart from such mutual agreement, no enforceable contract exists between the parties. And settlement agreements must meet the same requirements of formation and enforceability as other

---

[1] But see *In re Estate of Huff,* 287 Ga. App. 614, 614 (652 SE2d 203) (2007) (noting that the "any evidence" standard applies when the trial court has resolved fact issues in deciding the enforceability of a settlement agreement).

6

contracts. Thus, an answer to an offer will not amount to an acceptance, so as to result in a contract, unless it is unconditional and identical with the terms of the offer. The offer must be accepted unequivocally and without variance of any sort. And if a purported acceptance of the plaintiff's settlement offer imposes any new conditions, it constitutes a counteroffer rather than an acceptance. Furthermore, the party asserting the existence of a contract has the burden of proving its existence and its terms.

(Footnotes and punctuation omitted.) *Torres v. Elkin*, 317 Ga. App. 135, 140-141 (730 SE2d 518) (2012). See also *Anderson v. Benton*, 295 Ga. App. 851, 852 (673 SE2d 338) (2009); *Ruskin v. AAF-McQuay, Inc.*, 284 Ga. App. 49, 51-52 (1) (643 SE2d 333) (2007).

1. Hansen first contends that the trial court erred by enforcing the settlement agreement because Liberty Mutual failed to comply with the "specific and explicit condition precedent" to deliver a limited release that did not contain indemnification language.

"An offer may be accepted . . . either by a promise to do the thing contemplated therein, or by the actual doing of the thing. The offer must be accepted in the manner specified by it; and if it calls for a promise, then a promise must be made; or if it calls

7

for an act, it can be accepted only by the doing of the act." (Citation and punctuation omitted) *Herring v. Dunning*, 213 Ga. App. 695, 699 (446 SE2d 199) (1994). Thus, the question here is whether Liberty Mutual's delivery of a release that contained indemnification language, contrary to Hansen's settlement demand, constituted an acceptance. Under the particular facts of this case, we conclude that it did.

> In determining if parties had the mutual assent or meeting of the minds necessary to reach agreement, courts apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable man in the position of the other contracting party would ascribe to the first party's manifestations of assent. *Cox Broadcasting Corp. v. Nat. Collegiate Athletic Assn.*, 250 Ga. 391, 395 (297 SE2d 733) (1982). In making that determination, "the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement, and courts are free to consider such extrinsic evidence. See 1 Williston on Contracts, § 21, 3 Corbin on Contracts, §§ 106, 577." *Cox Broadcasting*, supra at 395.

*Frickey v. Jones*, 280 Ga. 573, 575 (630 SE2d 374) (2006). *McReynolds v. Krebs*, 290 Ga. 850, 853 (2) (725 SE2d 584) (2012)

Consideration of the extrinsic evidence in this case is particularly instructive. The first communication Bodoh received from Liberty Mutual after he sent his

8

settlement offer was a letter from O'Rear seeking an interview and additional information concerning Hansen's medical bills and earnings. But a mere request for confirmation does not constitute a counteroffer, e.g., *Herring v. Dunning*, 213 Ga. App. at 699; see also *McReynolds v. Krebs*, 290 Ga. at 855 (Melton, Justice, concurring in part and dissenting in part), and Budoh conceded at the hearing on the motion to enforce the agreement that he did not "claim this was in response to [the] . . . demand."

The next communication occurred a day or so later when O'Rear called Bodoh and informed him that she had sufficient information to tender the policy limits. She also stated that it would not be a problem to provide him with the limited release he wanted, and inquired whether he had a release he wanted to use. Bodoh said he did not, and O'Rear informed him that the only one she had "may have language in there that you don't like." Bodoh did not directly reply to this comment, but instead asked O'Rear if she had his fax number and indicated that would "probably be the best way to deal with stuff." Bodoh cut the conversation short when O'Rear again attempted to discuss the specifics of the only release she had to send him, although she did manage to inform him that she was trying to respond to his offer in a timely manner, which she mistakenly believed required her to respond that day.

9

O'Rear then faxed Bodoh a letter confirming their conversation, specifically inviting him to tailor the release to fit his "needs" and to make "any changes" he wished to make. At no point did she suggest, either in their conversation or the subsequent letters she faxed to Bodoh, that she was proposing release terms different or at variance with the ones he had requested. Further, we discern nothing that would suggest that she intended the release she provided to him to constitute a counteroffer or that Hansen had to sign that particular release as a condition of settlement. To the contrary, O'Rear clearly contemplated that Bodoh would strike through any portions of the release that were unacceptable to him. "[I]t is well settled that the mere inclusion of a release form unacceptable to the plaintiff does not alter the fact that a meeting of the minds has occurred with regard to the terms of the settlement." *Turner v. Williamson*, ___ Ga. App. ___ (Case Number A12A2534, decided February 28, 2013).

Here, it is clear that Liberty Mutual accepted Hansen's offer "'unequivocally and without variance of any sort.'" *Herring*, 213 Ga. App. at 698. Further, to the extent that the offer could only be accepted by performance of certain acts, not by a mutual exchange of promises, we believe that the facts here show that Liberty Mutual did perform the acts demanded for acceptance by tendering the policy limits and

10

providing Hansen with a limited liability release with the clear understanding that his attorney could tailor the release to fit his demand. Thus, "a binding contract [was] created, so far as the question of mutuality was concerned." *Douglas v. Austin-Western Road Machinery Co.*, 180 Ga. 29, 32 (1) (177 SE 912) (1934).

Further, the recent case of *Kitchens v. Ezell*, 315 Ga. App. 444 (726 SE2d 461) (2012) does not require a different result. First, *Kitchens* is physical precedent only and not binding. See Court of Appeals Rule 33 (a). And even if *Kitchens* were binding, it is factually distinguishable. In that case, counsel for the insurer sent the plaintiffs' counsel two proposed releases that covered claims and parties that were not part of the original settlement offer, but unlike the present case did not specifically invite plaintiff's counsel to change the releases to conform to the settlement demand. Thus, we do not believe *Kitchens* applies here. Further, we likewise find the following cases are distinguishable, as parenthetically explained: *Frickey*, 280 Ga. at 575-576 (no agreement to settle when insurer's response required an additional act–resolution of all liens); *McReynolds v. Krebs*, 290 Ga. at 854 (no binding agreement when counsel's response to settlement offer proposed resolution of liens "as part this settlement"); *Wyatt v. House*, 287 Ga. App. 739, 741 (3) (652 SE2d 627)

11

(2007) (no settlement agreement when insurer's response required a full release rather than the limited release plaintiff wanted).

2. Although Hansen takes issue with the trial court's reasoning on the issue of timely acceptance, he concedes on appeal that the trial court's holding that Liberty Mutual met the deadline for delivery of the check to Bodoh's office should be affirmed under the "right for any reason" rule. See OCGA § 1-3-1 (d) (3) (computation of time).

*Judgment affirmed. Doyle, P. J., Ray and Branch, JJ., concur. Barnes, P. J., Miller, P. J., and McFadden, J., dissent.*

A12A1988. HANSEN v. DOAN.

BARNES, Presiding Judge, dissenting.

I respectfully dissent. The uncontroverted record demonstrates that while the plaintiff expressly conditioned his settlement offer on the tender of a limited release with no indemnity language, Liberty Mutual instead tendered a limited release that contained indemnity language and simply promised to reach agreement on the precise terms of a release at some indefinite time in the future. Because Liberty Mutual's actions did not constitute an unequivocal acceptance of the plaintiff's settlement offer, there was no meeting of the minds and no settlement was reached. The trial court's order enforcing the alleged settlement thus should be reversed.

The principles of law applicable in this case are well-established. "A settlement agreement must meet the same requirements of formation and enforceability as other contracts. Only when a meeting of the minds exists will an agreement be formed." (Punctuation and footnote omitted.) *Greenwald v. Kersh*, 275

Ga. App. 724, 725-726 (621 SE2d 465) (2005).  See *Ruskin v. AAF-McQuay, Inc.*, 284 Ga. App. 49, 51-52 (1) (643 SE2d 333) (2007).  Hence, as with offers made in other contexts, an offer of settlement "must be accepted in the manner specified by it; and if it calls for a promise, then a promise must be made; or if it calls for an act, it can be accepted only by the doing of the act."  (Citation and punctuation omitted.) *Herring v. Dunning*, 213 Ga. App. 695, 699 (446 SE2d 199) (1994).  Furthermore, acceptance of a settlement offer must be "unequivocal[] and without variance of any sort."  (Citation and punctuation omitted.)  *McReynolds v. Krebs*, 290 Ga. 850, 853 (2) (725 SE2d 584) (2012).  Consequently, a purported acceptance of an offer to settle "that varies even one term of the original offer is a counteroffer."  (Citation and punctuation omitted.)  *Butler v. Household Mtg. Svcs.*, 266 Ga. App. 104, 106 (1) (596 SE2d 664) (2004).  See *Herring*, 213 Ga. App. at 698 ("An answer to an offer will not amount to an acceptance, so as to result in a contract, unless it is unconditional and identical with the terms of the offer.") (citation and punctuation omitted).

The record reflects that after the plaintiff suffered multiple fractures and other severe injuries when his motorcycle was struck by an automobile, his counsel sent a settlement demand letter to the other driver's automobile insurance carrier, Liberty

Mutual, on July 11, 2011. The July 11, 2011 settlement demand letter made a "time limited offer" for the plaintiff to sign a "Limited Release with Liberty Mutual Fire Insurance Company within the meaning of OCGA § 33-24-41.1 for the full $25,000 in policy limits." The demand letter specified the precise manner of acceptance by Liberty Mutual:

> To be accepted, the OCGA § 33-24-41.1 Limited Release in favor of Laura Henkleman Doan and Liberty Mutual Fire Insurance Company only (with no indemnity language) and the $25,000 check payable to Lawrence Hansen and Robertson, Bodoh & Nasrallah, LLP must be received within twelve (12) days of you receiving this demand. The offer is automatically withdrawn if these conditions are not complied with within the time limit.

By its plain language, the settlement demand letter did not contemplate a mutual exchange of promises; rather, the offer required Liberty Mutual to perform by supplying the limited release "with no indemnity language" and the $25,000 check within twelve days of Liberty Mutual receiving the demand. See generally *Penn v. Muktar*, 309 Ga. App. 849, 850-851 (711 SE2d 337) (2011) (offer to settle required insurance company to perform certain acts within 20 days of demand letter); *Carterosa, Ltd. v. General Star Indem. Co.*, 227 Ga. App. 246, 248 (1) (489 SE2d 83)

3

(1997) (noting that "the offeror may specify a method through which the offer must be accepted").

Liberty Mutual met the requirement of tendering the $25,000 check representing the insurance policy limits, but not the additional requirement of tendering a limited release with no indemnity language. In this regard, on July 22, 2011, Liberty Mutual tendered a limited release to plaintiff's counsel that did contain indemnity language.[1] Accompanying that release was a letter from Liberty Mutual's claims specialist which stated, "We will . . . agree to a limited release," and further stated,

> You indicated that you did not have a specific release you wanted to use. I am attaching the only limited release that I have which we can tailor to fit your needs. If you would please look it over and make your suggestions on any changes you wish to make then we can iron out those details.

---

[1] Before tendering the limited release containing indemnity language to plaintiff's counsel by fax, Liberty Mutual's claims specialist contacted counsel by phone and, unbeknownst to counsel, recorded the conversation. During the call in which the issue of indemnity was never mentioned, plaintiff's counsel cut short the conversation and noted that "the best way to deal with stuff" would be by fax rather than by telephone. Contrary to the defendant insured's suggestion on appeal, there is nothing in the transcript of the abbreviated telephone conversation to indicate that plaintiff's counsel intended to change the offer to no longer require Liberty Mutual to tender a limited release without indemnity language as a condition of a settlement being reached.

4

The claims specialist concluded the response to the plaintiff's offer by stating, "Please get back to me at your earliest convenience so that we may conclude this matter."

Liberty Mutual's July 22, 2011 tender of a limited release containing indemnity language, when construed with the accompanying letter from the claims specialist, clearly did not constitute an unequivocal, unvarying acceptance. See *McReynolds*, 290 Ga. at 853 (2) (acceptance of a settlement offer must be "unequivocal[] and without variance of any sort") (citation and punctuation omitted). The release itself varied from the terms of the original offer made in the settlement demand letter. Furthermore, the accompanying letter from the claims specialist simply expressed a willingness by Liberty Mutual to agree in the future to a limited release after ironing out the details based upon the plaintiff's suggestions. The net effect was that Liberty Mutual tendered a non-conforming release offering to work out acceptable terms with the plaintiff.

An agreement to agree in the future does not create a binding contract. See *John Bleakley Ford, Inc. v. Estes*, 164 Ga. App. 547, 548 (1) (298 SE2d 270) (1982). Moreover, when an offer calls for acceptance through performance of a specific act, then the act must be performed for the offer to be accepted; a party does not accept

5

the offer simply by promising to perform that specific act in the future. See *Herring v. Dunning*, 213 Ga. App. 695, 699 (446 SE2d 199) (1994). Accordingly, Liberty Mutual's tender of the limited release containing indemnity language, qualified and conditioned in the accompanying letter on the parties reaching an agreement on the actual terms of a release, did not operate as an unequivocal acceptance of the settlement offer. It follows that there was never any meeting of the minds, and thus no enforceable settlement.[2] See *Penn*, 309 Ga. App. at 850-851 (no settlement agreement formed, where plaintiff's offer expressly conditioned agreement on insurer's tender of release covering only bodily injury claims, but insurer tendered release covering "any and all claims" resulting from collision). See also *McReynolds*, 290 Ga. at 853-854 (2); *Frickey v. Jones*, 280 Ga. 573, 575-576 (630 SE2d 374) (2006); *Kitchens v. Ezell*, 315 Ga. App. 444, 447-449 (1) (a) (726 SE2d 461) (2012) (physical precedent only). Cf. *Pargar, LLC v. CP Summit Retail, LLC*, 316 Ga. App. 668, 672 (730 SE2d 136) (2012) (letter stating that it was tenant's "intent" to exercise

---

[2] It may well be the case that the claims specialist was acting reasonably and in good faith and had the desire to reach a settlement with the plaintiff, and that any claim ultimately brought by the plaintiff pursuant to *Southern General Ins. Co. v. Holt*, 262 Ga. 267 (416 SE2d 274) (1992) might fail. But the *Holt* issue presents a separate question from whether Liberty Mutual made an unconditional acceptance of the settlement demand and thus from whether a binding contract was in fact formed between the parties.

option to renew lease and requesting that landlord contact tenant to "discuss" rental rates and "agree to terms" did not constitute an operative notice of acceptance of the renewal option).

The majority, in concluding that a binding settlement agreement was formed, states that the Liberty Mutual claims specialist "clearly contemplated that [plaintiff's counsel] would strike through any portions of the release that were unacceptable to him," and "specifically invite[d] plaintiff's counsel to change the releases to conform to the settlement demand." But the letter from the claims specialist to plaintiff's counsel expressly referred to any proposed revisions by counsel as "suggestions," and went on to state that the parties would "iron out the details" and then "conclude the matter" at a later time. While the claims specialist's willingness to contemplate the plaintiff's proposed changes to the release may indicate her good faith attempt to settle the matter, the letter cannot be read as giving the plaintiff's attorney permission to unilaterally revise the release to his choosing without any further review and input from Liberty Mutual and without the latter having a chance to agree or disagree with the proposed revisions.[3]

_____

[3] It is worth noting that the claims specialist could have tendered a release that conformed to the settlement offer by simply striking out the indemnity language before tendering the release.

7

The majority also relies upon the recent case of *Turner v. Williamson*, __ Ga. App. __ (Case No. A12A2534, decided Feb. 28, 2013), but that case is plainly distinguishable. Under Georgia law, unless an offer specifies otherwise, it can be accepted "either by a promise to do the thing contemplated therein, or by the actual doing of the thing." *Herring*, 213 Ga. App. at 699. The settlement offer in *Turner* did not specify the mode of acceptance and thus could be accepted by a return promise made by the insurer. Therefore, as we held, a binding contract was formed in that case when the insurer agreed to provide the insurance policy limits in return for the plaintiffs' execution of a limited release in accordance with OCGA § 33-24-41.1. *Turner*, __ Ga. App. at __ (2). In that context, where the settlement agreement could be formed through the exchange of mutual promises, the insurer's presentation of a proper release for the plaintiffs to sign was a "condition of defendant's performance" rather than an act necessary to the formation of a binding settlement. Id.

In contrast to *Turner*, the plaintiff's settlement offer in the instant case could not be accepted merely by a return promise. Rather, as the plaintiff's settlement demand letter makes clear, the offer to settle could only be accepted by performance, i.e., by Liberty Mutual's tender of both the $25,000 check and a limited release with

8

no indemnity language. Hence, the presentation of a limited release with no indemnity language was not merely a "condition of defendant's performance" as in *Turner*, but rather an act necessary to acceptance of the plaintiff's settlement offer. See *Kitchens*, 315 Ga. App. at 447-449 (1) (a); *Penn*, 309 Ga. App. at 850-851. The majority's reliance on *Turner*, therefore, is misplaced.

For these combined reasons, I believe that a binding settlement agreement was never reached by the parties and that the trial court's order granting the motion to enforce the settlement should be reversed. Because the majority concludes otherwise, I must respectfully dissent.

I am authorized to state that Presiding Judge Miller and Judge McFadden join in this dissent.

9

A12A1988. HANSEN v. DOAN.

McFadden, Judge, dissenting.

William Roper: So now you'd give the devil the benefit of law?

Sir Thomas More: Yes. What would you do? Cut a great road through the law to get after the devil?

Roper: I'd cut down every law in England to do that.

More: Oh, and when the last law was down, and the devil turned on you, where would you hide, Roper, the laws all being flat? This country is planted thick with laws from coast to coast, man's laws not God's, and if you cut them down -- and you're just the man to do it -- do you really think that you could stand upright in the winds that would blow then?

Yes, I'd give the devil the benefit of the law, for my own safety's sake.

Robert Bolt, *A Man for All Seasons*, act. 1, sc. 7.

Prominent in our law is the rule that one who makes an offer is master of the offer. A purported acceptance that fails to meet every condition of an offer -- however

unreasonable the condition -- is a counteroffer and does not create a contract. The majority would cut down that rule to get after a claim that has not yet been brought. See *Southeastern General Ins. Co. v. Holt*, 262 Ga. 267 (416 SE2d 274) (1992). I therefore respectfully dissent.