**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**August 27, 2018**

# In the Court of Appeals of Georgia

A18A1114. DUENAS v. COOK.

McMILLIAN, Judge.

Plaintiff Joseph Duenas appeals the trial court's order granting defendant Wade R. Cook's motion to enforce settlement agreement and dismissing Duenas' complaint in this personal injury action. Duenas argues that the trial court erred in finding the agreement had been accepted by Cook in writing as provided in the settlement offer and that the parties had entered into an enforceable settlement agreement. As more fully set forth below, we agree and reverse.

> We apply a de novo standard of review to a trial court's order on a motion to enforce a settlement agreement. Because the issues raised are analogous to those in a motion for summary judgment, in order to succeed on a motion to enforce a settlement agreement, a party must show the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to

create a jury issue on at least one essential element of the Appellant's case. Thus, we review the evidence in a light most favorable to the nonmoving party.

*Newton v. Ragland*, 325 Ga. App. 371, 371 (750 SE2d 768) (2013). See also *Partain v. Pitts*, 338 Ga. App. 298, 298 (787 SE2d 354) (2016); *Johnson v. DeKalb County*, 314 Ga. App. 790, 791 (726 SE2d 102) (2012).

So viewed, on September 4, 2016, while driving his truck, Wade Cook allegedly struck and injured Duenas, who was riding a bicycle along the side of the road. At the time, Cook had liability insurance coverage for his truck through Nationwide Mutual Insurance Company ("Nationwide"). On October 27, 2016, Duenas' attorney sent Nationwide a time-limited settlement offer ("Settlement Offer") pursuant to OCGA § 9-11-67.1. In pertinent part, the Settlement Offer stated:

> The *material terms* of this written offer of compromise are made pursuant to OCGA § 9-11-67.1.
>
> Pursuant to OCGA § 9-11-67.1 (a):
>
> 1.     The time period within which this offer must be accepted is *thirty-five (35) days* from Nationwide Mutual Insurance Company's receipt of this offer;

2. The amount of monetary payment is Nationwide Mutual Insurance Company's policy limits of $100,000.00;

3. The party Mr. Duenas will release is Wade Ross Cook;

4. The type of release that Mr. Duenas will provide to Wade Ross Cook is a Limited Liability Release pursuant [to] OCGA § 33-24-41.1 that preserves Mr. Duenas's right to seek all other available insurance through any insurance carrier, including, but not limited to Nationwide Mutual Insurance Company, if applicable;

5. The claims to be released pursuant to a Limited Release are all personal injury/bodily injury claims held by Mr. Duenas as a result [of] the subject collision of September 4, 2016.

Pursuant to OCGA § 9-11-67.1 (b), Nationwide Mutual Insurance Company may accept this offer of compromise by providing written acceptance of the material terms outlined immediately above pursuant to OCGA § 9-11-67.1 (a) in their entirety.

Nationwide received the offer on October 31, 2016,[1] and on November 1, 2016, Martha Vazquez, the Nationwide claims representative assigned to handle the claim, spoke with Susan Joyce at Duenas' attorney's office. Vazquez averred that during the

---

[1] Under the terms of the offer, Nationwide had thirty-five days from the receipt of the offer to respond or until December 5, 2016.

call, she indicated to Joyce that Nationwide would accept the settlement demand and would write a check for the bodily injury policy limit of $100,000.00. Joyce requested that the insured execute an affidavit that no other insurance was available to cover the claim, which had also been requested in the Settlement Offer, and on November 16, 2016, Vazquez sent Nationwide an email attaching Cook's executed affidavit of no other insurance. On November 16, 2016, Joyce responded by sending Vazquez an email thanking her for the insured's affidavit and advising that they would need a limited liability release and gave instructions on how to make out the check. On the same day, Vazquez sent Joyce an email attaching a "Limited Liability Release," a "No Medicare Addendum," and a "Lien Affidavit." Vazquez then sent Joyce another email, stating that the settlement check was "on its way" and inquired about how they wanted to handle the property damage claim. Nationwide also sent a letter to Duenas informing him that Nationwide was sending the check to his attorney.

According to Vazquez, on December 15, 2016, Vazquez and Joyce again spoke on the phone and Joyce confirmed the receipt of the settlement check and stated that she would forward the documents for the property damage claim once Duenas came to the office to sign the release.

On December 16, 2016, Duenas' attorney emailed Vazquez. This lengthy email referenced an earlier email sent on November 30, 2016, stating that he had not received a response to that email, which apparently had been sent to the wrong e-mail address. He also confirmed receipt of Nationwide's checks and other documents, but then went on to state the documents were unacceptable, as "[t]hey either create burdens on my client that are not part of my client's offer of compromise or that are not possible for my client to truthfully sign." The email went on to state, "I also want to make clear that you have never even accepted my client's offer of compromise. Accordingly, at this point, we do not yet have any agreement." The email also extended the deadline for acceptance to 5:00 p. m. on Wednesday, December 21, 2016, and urged:

> I respectfully request that you re-read my client's offer of compromise dated October 27, 2016, and provide Nationwide's acceptance thereto as required by the express terms of my client's offer of compromise and by OCGA § 9-11-67.1. Until you have accepted the offer as required, there is no agreement.

Nationwide responded almost immediately, stating in part as follows:

> We have tendered our policy limits of $100,000.00 for settlement of your client's bodily injury claim. Also forward you the affidavit executed by our policyholder. The forms that I sent you are our standard

documents nationwide requires us to send. If you have another release that [you] would like for us to review, please feel free to send it over and we will have our legal department review it for approval.

On January 5, 2017, another attorney representing Duenas contacted Vazquez by telephone; this conversation was recorded and a transcript of the call was made part of the record below. The attorney explained that he was consulting on the case and would probably take over as lead counsel. The attorney also told Vazquez that Nationwide had counter offered by sending additional documents not mentioned in the Settlement Offer, and Vazquez responded that she was required to send the documents, but she did not know if Nationwide would require Cook to execute the documents. Vazquez also indicated they should send over a different release if they wanted to use a different one and that she would have their legal department look at it. Duenas' attorney indicated he would review the documents with Duenas' other attorney to ascertain the exact nature of his concerns and talk to Vazquez the following Monday.

The attorney and Vazquez spoke again on January 12, 2017; this conversation was also recorded and a transcript of the call was made part of the record below. They

6

discussed sending a different release and whether it was necessary for Duenas to execute the additional documents. The attorney also explained that

> I understand [Nationwide] is tendering its limits. But that's different th[a]n Nationwide saying they unequivocally accept Mr. Duenas' offer of compromise without variance of any sort. So I'm asking can you send me a letter right now or can you say right now that on behalf of Nationwide, that Nationwide unequivocally accepts Mr. Duenas' offer of compromise without variance of any sort or would you have to get additional approval from someone else at Nationwide to say that because it doesn't include the [other documents].

Vazquez responded that she would have to get additional approval, and the attorney summarized what he needed to convey to Duenas and his other attorney as follows:

> [W]hat I'm going to convey is that right now Nationwide cannot officially accept his offer of compromise without variance of any sort but that Nationwide will tender its limits with the documents that were there including the affidavit, the lien affidavit, and the Medicare Affidavit, and, if I wanted to present a new release, you would present that to Nationwide to look at it and if we asked you to ask Nationwide if they would accept it unequivocally without those other documents, you could pass that along too."

Vazquez responded "Right. Correct." The attorney then indicated he would get back to her the next day.

On January 16, 2017, the attorney sent a letter to Nationwide setting out the position that Nationwide had counter offered when it sent the No Medicare Addendum and Lien Affidavit, and reiterated the position in the December 16, 2016 email that Duenas could not truthfully execute the Lien Affidavit and other concerns with the documents. The attorney then specifically rejected Nationwide's counteroffer, withdrew Duenas' previous offer to compromise, and returned the settlement check.

On March 27, 2017, Duenas filed a personal injury suit against Cook in Cobb County State Court. After Cook moved to enforce the parties' settlement agreement, the trial court granted the motion and dismissed Duenas' complaint with prejudice without holding a hearing, and Duenas appealed. In his sole enumeration of error, Duenas contends the trial court erred by enforcing the settlement agreement and dismissing his complaint because Nationwide, on Cook's behalf, never accepted in writing the material terms of the Settlement Offer.

Under Georgia law, an agreement alleged to be in settlement and compromise of a pending lawsuit must meet the same requisites of formation and enforceability as any other contract. *Torres v. Elkin,* 317 Ga. App. 135, 140-41 (730 SE2d 518) (2012). Likewise, an "offer must be accepted in the manner specified by it; and if it

calls for a promise, then a promise must be made; or if it calls for an act, it can be accepted only by the doing of the act." *Hansen v. Doan*, 320 Ga. App. 609, 612 (1) (740 SE2d 338) (2013). See also *Herring v. Dunning*, 213 Ga. App. 695, 699 (446 SE2d 199) (1994). Thus,

> an answer to an offer will not amount to an acceptance, so as to result in a contract, unless it is unconditional and identical with the terms of the offer. The offer must be accepted unequivocally and without variance of any sort. And if a purported acceptance of the plaintiff's settlement offer imposes any new conditions, it constitutes a counteroffer rather than an acceptance.

(Citation and punctuation omitted.) *Torres*, 317 Ga. App. at 141 (2). See also *Grange Mut. Cas. Co. v. Woodward*, 300 Ga. 848, 853 (2) (a) (797 SE2d 814) (2017); *Frickey v. Jones*, 280 Ga. 573, 574 (630 SE2d 374) (2006); *Hansen*, 320 Ga. App. at 612; *Herring*, 213 Ga. App. at 699.

Here, Duenas made the Settlement Offer pursuant to OCGA § 9-11-67.1, which governs pre-suit offers in suits involving tort claims arising from the use of a motor vehicle, and contained the five material terms required by the statute.[2] The Settlement

---

[2] OCGA § 9-11-67.1 (a) provides:

Offer also followed the language of the statute and required "written acceptance of the material terms." See OCGA § 9-11-67.1 (b) ("The recipients of an offer to settle made under this Code section may accept the same *by providing written acceptance of the material terms*[.]") (emphasis supplied); *Grange*, 300 Ga. at 855-56 ("this language means that a Pre-Suit Offer must be accepted in writing, at least as to the

_____

(a) Prior to the filing of a civil action, any offer to settle a tort claim for personal injury, bodily injury, or death arising from the use of a motor vehicle and prepared by or with the assistance of an attorney on behalf of a claimant or claimants shall be in writing and contain the following material terms:

(1) The time period within which such offer much be accepted, which shall not be less than 30 days from receipt of the offer;

(2) Amount of monetary payment;

(3) The party or parties the claimant or claimants will release if such offer is accepted;

(4) The type of release, if any, the claimant or claimants will provide to each releasee; and

(5) The claims to be released.

10

five terms listed in subsection (a).""). Thus, pursuant to the governing statutory authority, the Supreme Court's interpretation of the statute, and the plain language of the Settlement Offer, Nationwide was required to accept the material terms of the offer on behalf of its insured in writing.

Although Nationwide acknowledges that its acceptance had to be unconditional and identical with the terms of the offer and appears to concede that it never sent any written communication specifically accepting all the material terms of the offer, Nationwide asserts that the series of emails between Vazquez and Joyce are writings showing that Nationwide unconditionally accepted the offer. We disagree under the facts and circumstances of this case.

Although neither the statute nor the Settlement Offer requires the written acceptance to be in any particular form or by any particular method, because Nationwide relies on a series of writings to constitute the acceptance of the terms, some written statement accepting each or all of the material terms is required. Here, the Settlement Offer plainly stated that Duenas was only offering to settle his personal injury/bodily injury claims. However, in response, Nationwide sent the Limited Release, which purported to release Cook "from any and all claims, demands, rights,

11

and causes of action of whatsoever kind and nature, specifically including but not limited to, all known and unknown bodily and personal injuries of the Undersigned, all damages to the Undersigned's property, . . ." We also note that the cover email transmitting the release merely forwarded the documents and did not indicate that it was a draft that could be revised to conform to the terms of the Settlement Offer. Cf. *Sherman v. Dickey*, 322 Ga. App. 228, 231 (1) (744 SE2d 408) (2013) (binding settlement when insureds repeatedly invited changes to the proposed release); *Hansen*, 320 Ga. App. at 614 (1) (draft release forwarded "with the clear understanding that [plaintiff's] attorney would tailor the release to fit his demand"). Vazquez later sent two other emails referring to the property damage claim, but that correspondence also did not clarify whether Nationwide was requiring the property damage claim to be released.

Subsequent conversations between Vazquez and Duenas' attorney also support the inference that Nationwide did not intend the forwarding of the release to be an unequivocal acceptance of the Settlement Offer. When repeatedly pressed by Duenas' attorney to confirm the acceptance of the terms of the Settlement Offer in writing, Vazquez would only confirm that Nationwide's counsel would review any release forwarded by Duenas' attorney. Considering the evidence in the light most favorable

to the nonmoving party, as we must, we find that Nationwide did not unequivocally accept the material term in the Settlement Offer that Duenas would only release his bodily injury claims, and thus there was no meeting of the minds and no settlement. See *Penn v. Muktar*, 309 Ga. App 849 (711 SE2d 337) (2011) (no binding settlement when insurer held settlement funds pending execution of release that included all claims from accident, and not just bodily injury claim); cf. *Tillman v. Mejabi*, 331 Ga. App. 415 (771 SE2d 110) (2015) (providing general release in response to offer to fully and finally settlement claim did not materially vary terms of offer). The judgment of the trial court is thus reversed and the case remanded for further proceedings consistent with this opinion.

*Judgment reversed and case remanded. Barnes, P. J., and Reese, J., concur.*