**THIRD DIVISION
DILLARD, P. J.,
MARKLE and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**February 13, 2020**

# In the Court of Appeals of Georgia

A19A2266. BARNES v. MARTIN-PIERCE et al.

DILLARD, Presiding Judge.

In this personal-injury action, Edwina Martin-Price, Melissa Boddie, and Yketa Favors—as heirs and representatives of the estate of Norman Favors and "Plaintiffs"—sued Latoya Barnes, alleging that Barnes's negligent operation of her motor-vehicle caused a collision with Norman Favors's vehicle that resulted in his death. On appeal, Barnes challenges the trial court's order denying her motion to enforce settlement, arguing that her insurer's tender met the terms of the Plaintiffs' counter-offer and their counsel's depositing of the insurer's settlement check constituted a final settlement of all claims. For the reasons discussed *infra*, we agree with Barnes's contentions and, thus, reverse the trial court's order.

The record shows that on the night of September 22, 2014, Barnes was driving home from a nightclub when her vehicle crossed over the centerline of the highway into oncoming traffic and collided with 63-year-old Norman Favors's vehicle, resulting in his death. Law enforcement arrested Barnes, and the State ultimately charged her with vehicular manslaughter and driving under the influence of alcohol. On February 12, 2015, Barnes pleaded guilty to those charges, and the trial court imposed a sentence of 15 years, with seven to be served in incarceration.

At the time of the accident, Barnes had motor-vehicle insurance through a policy issued by National Unity Insurance Company. And on October 27, 2014, Plaintiffs' counsel sent a letter to Barnes's insurer, notifying it of counsel's representation of Favors's heirs and the estate and attaching the death certificate. Barnes's insurer responded less than one week later, unconditionally offering $25,000 as the full liability limit of Barnes's policy. On January 5, 2015, Plaintiffs' counsel responded (via letter), stating that they would "need a limited release" and "the check before the limited release is signed." Barnes's insurer then engaged local counsel to draft the limited release requested by Plaintiffs, and on February 6, 2015, that counsel wrote to Plaintiffs' counsel, seeking confirmation that Plaintiffs were the only known heirs of Norman Favors. On February 18, 2015, Plaintiffs' counsel responded (via

2

email), confirming that Plaintiffs were Favors's only heirs. And in that same correspondence, in an apparent effort to investigate a possible dram-shop action, Plaintiffs' counsel made the following inquiry: "I also need to speak to the defendant. Would you like to facilitate that, or shall I simply seek to go and meet her at the jail[?]" That same day, the insurer's counsel responded, also via email, that he "was engaged solely to facilitate the release" and that he would have a proposed limited liability release for counsel the following day. A few minutes later, Plaintiffs' counsel emailed back stating, "Fair enough. If you don't represent her in any other capacity, I'll reach out to her directly." The next day, as promised, the insurer's counsel emailed a proposed limited liability release to Plaintiffs' counsel.

On March 6, 2015, Plaintiffs' counsel emailed the insurer's counsel as follows: "I attempted to speak with the defendant yesterday. She refused. It's imperative that I be able to speak with her. Therefore, we are going to file suit and serve her with discovery. We can of course re-visit the release and potential settlement after we get answers. Will you be defending the suit?" The insurer's counsel did not reply to this email, and on March 23, 2015, Plaintiffs filed their complaint against Barnes. On April 21, 2015, Barnes's insurer wrote her to advise that it was paying the Plaintiffs the policy limits and would not be defending her in any litigation. One week later,

3

April 28, 2015, the insurer sent a letter to Plaintiffs' counsel, enclosing a check in the amount of $25,000, which stated in the memo line "FULL AND FINAL PAYMENT FOR BODILY INJURY CLAIM." Then, on April 30, 2015, Plaintiffs' counsel responded, via letter, as follows:

> We received the check and draft release on April 29, 2015. We will hold the check in Trust pending resolution of our investigation into this matter. By holding the funds in Trust, we are not in any way changing the nature of our recent discussions and understanding. More specifically, we are not agreeing to release Ms. Barnes at this time. We have filed suit and served her. Please let the insurance company know that so they can timely assign counsel and answer both the complaint and discovery. We need Ms. Barnes to cooperate with discovery. Once she has, we will re-evaluate this. If you prefer, we can return the check to you. At the appropriate time we can negotiate and finalize release terms.

The insurer's counsel did not respond. Nevertheless, on May 4, 2015, Plaintiffs' counsel deposited the check into his firm's escrow account.

Barnes did not initially file an answer to Plaintiffs' complaint and, thus, defaulted. On September 18, 2015, she filed an answer and a motion to open default, citing excusable neglect. But more than two years later (on November 17, 2017), the trial court denied her motion. Subsequently, on April 30, 2018, Barnes filed a motion

4

to enforce settlement, which she argued the parties reached at the time her insurer responded to Plaintiffs' request for a limited liability release and a check for the policy limits by providing both. A little more than a month later, Plaintiffs filed a response motion. On January 23, 2019, the trial court held a hearing on the matter, and on March 26, 2019, it issued an order denying Barnes's motion. Even so, the court issued a certificate of immediate review, and we granted Barnes's application for interlocutory review. This appeal follows.

1. Barnes argues that the trial court erred in denying her motion to enforce settlement agreement, arguing that Plaintiffs' correspondence indicating that they would agree to a limited liability release in exchange for Barnes's policy limits of $25,000 and his insurer's subsequent compliance constituted a counter-offer and acceptance. We agree and, therefore, reverse the trial court's order.

In reviewing the trial court's order on both a motion to enforce a settlement agreement and a motion for summary judgment, "we apply a de novo standard of review and, thus, view the evidence in a light most favorable to the nonmoving party."[1] Bearing this standard of review in mind, well-established principles also

---

[1] *Torres v. Elkin*, 317 Ga. App. 135, 140 (2) (730 SE2d 518) (2012) (punctuation omitted); *accord Anderson v. Benton*, 295 Ga. App. 851, 852 (673 SE2d 338) (2009).

guide our inquiry into whether the parties entered into a settlement agreement.[2]

Specifically, in order to prevent litigation, "compromises of doubtful rights are upheld by general policy."[3] But courts are limited to enforcing "those terms upon which the parties themselves have mutually agreed."[4] And apart from such mutual agreement, "no enforceable contract exists between the parties."[5] In fact, settlement agreements must "meet the same requirements of formation and enforceability as other contracts."[6] Thus, an answer to an offer will not amount to an acceptance, so as to result in a contract, unless "it is unconditional and identical with the terms of the offer."[7] Indeed, the offer must be accepted unequivocally and without variance of any

---

[2] *See Anderson*, 295 Ga. App. at 854 (1) (noting that in deciding whether the parties entered into an enforceable settlement agreement, this Court is governed by well-established principles).

[3] *Torres*, 317 Ga. App. at 140 (2) (punctuation omitted); *see Herring v. Dunning*, 213 Ga. App. 695, 696 (446 SE2d 199) (1994) ("Compromises of doubtful rights are upheld by general policy, as tending to prevent litigation, in all enlightened systems of jurisprudence" (punctuation omitted)).

[4] *Herring*, 213 Ga. App. at 696-97 (punctuation omitted).

[5] *Torres*, 317 Ga. App. at 141 (2).

[6] *Id.*; *accord Grange Mut. Cas. Co. v. Woodard*, 300 Ga. 848, 852 (2) (A) (797 SE2d 814) (2017).

[7] *Torres*, 317 Ga. App. at 141 (2) (punctuation omitted); *accord Woodard*, 300 Ga. at 852 (2) (A); *Frickey v. Jones*, 280 Ga. 573, 574 (630 SE2d 374) (2006).

6

sort, and "if a purported acceptance of the plaintiff's settlement offer imposes any new conditions, it constitutes a counteroffer rather than an acceptance."[8] Finally, the party asserting the existence of a contract has "the burden of proving its existence and its terms."[9]

Importantly, Georgia law holds that an offer may be accepted "either by a promise to do the thing contemplated therein, or by the actual doing of the thing."[10] And if an offer calls for an act, "it can be accepted only by the doing of the act."[11] Here, the insurer offered to settle Plaintiffs' claim against Barnes for the $25,000 policy limits and a general liability release. Plaintiffs then countered, through their counsel, that they required a limited release, as well as the check for the policy limits.

---

[8] *Torres*, 317 Ga. App. at 141 (2); *see Woodard*, 300 Ga. at 852 (2) (A) (noting that to constitute a contract, the offer must be accepted unequivocally and without variance of any sort, and a purported acceptance of a plaintiff's settlement offer which imposes conditions will be construed as a counter-offer to the offer to settle for the policy limits); *Frickey*, 280 Ga. at 574 (same).

[9] *Torres*, 317 Ga. App. at 141 (2); *accord Sherman v. Dickey*, 322 Ga. App. 228, 232 (1) (744 SE2d 408) (2013).

[10] *Herring*, 213 Ga. App. at 699 (punctuation omitted); *accord Partain v. Pitts*, 338 Ga. App. 298, 300 (787 SE2d 354) (2016); *Hansen v. Doan*, 320 Ga. App. 609, 612 (1) (740 SE2d 338) (2013).

[11] *Herring*, 213 Ga. App. at 699 (punctuation omitted); *accord Hansen*, 320 Ga. App. at 612 (1).

The insurer, on Barnes's behalf, accepted this counter-offer by providing a limited liability release and, later, tendering the check. Consequently, Barnes and her insurer's compliance with the demands of Plaintiffs' counter-offer constituted an acceptance.[12]

Nevertheless, Plaintiffs argue that there was never a meeting of the minds required to create an enforceable agreement. Specifically, Plaintiffs assert that their acceptance of any agreement was contingent upon their counsel speaking to Barnes, in order to explore a possible dram-shop action, and that this interview never occurred. But this request by Plaintiffs' counsel in his correspondence with Barnes's

---

[12] *See Newton v. Ragland*, 325 Ga. App. 371, 373-74 (1) (750 SE2d 768) (2013) (holding that insurer's tender of policy limits by plaintiff's deadline constituted acceptance of plaintiff's settlement offer, which stated that plaintiff would execute limited liability release in exchange for policy limits by deadline and, thus, enforceable settlement agreement existed); *Hansen*, 320 Ga. App. at 614 (1) (holding that the facts showed that defendant's insurer did perform the acts demanded for acceptance by tendering the policy limits and providing plaintiff with a limited liability release with the clear understanding that his attorney could tailor the release to fit his demand); *Smith v. Hall*, 311 Ga. App. 99, 101-02 (714 SE2d 742) (2011) (holding that general release of plaintiff's claim against defendant submitted with letter from defendant's counsel accepting injured plaintiff's offer for settlement for limits of defendant's insurance policy and check for amount of policy limit did not constitute rejection of plaintiff's counteroffer, and thus, settlement agreement was enforceable); *Herring*, 213 Ga. App. at 699-700 (holding that defendant's compliance with plaintiff's demand by paying policy limits in exchange for a release constituted an acceptance of plaintiff's settlement offer).

insurer's counsel was merely precatory language,[13] and did not constitute another counter offer.[14] Indeed, the request was not contradictory to the execution of a limited liability release and, as a result, did not preclude Plaintiffs from suing other tortfeasors. And prior to his March 6, 2015 correspondence, Plaintiffs' counsel did not indicate that speaking to Barnes was a condition precedent to any settlement. In fact, when the insurer's counsel responded to Plaintiffs' counsel's initial entreaty regarding interviewing Barnes by stating that he was only engaged to draft the release, Plaintiffs' counsel responded: "Fair enough." Accordingly, the trial court erred in denying Barnes's motion to enforce settlement.

---

[13] *See Raines v. Duskin*, 247 Ga. 512, 523 (2) (277 SE2d 26) (1981) ("Precatory words are words whose ordinary significance imports entreaty, recommendation, or expectation rather than any mandatory direction." (punctuation omitted)); *Torres*, 317 Ga. App. at 141 (2) (noting that "[l]anguage is properly characterized as 'precatory' when its ordinary significance imports entreaty, recommendation, or expectation rather than any mandatory direction" (punctuation omitted)).

[14] *See Pourreza v. Teel Appraisals & Advisory, Inc.*, 273 Ga. App. 880, 883 (616 SE2d 108) (2005) (finding precatory language when the offeree asked the offeror to "let me know" if other documents were necessary); *Herring*, 213 Ga. App. at 699-700 (holding that fact that defendant's acceptance of plaintiff's offer to settle suggested one form of terminating the controversy over another does not render such acceptance a counteroffer which rejects the plaintiff's offer but, rather, was a valid acceptance with the suggested choice for terminating the controversy being merely precatory).

2. Barnes further contends that the trial court erred in denying her motion to enforce settlement because the depositing of the insurer's settlement check by Plaintiffs' counsel constituted a final settlement of the claim. Again, we agree.

It is well established that "[t]he delivery and acceptance of a check stating on its face that it constitutes final settlement of a claim, whether the amount of the claim is established or uncertain, amount to an accord and satisfaction which discharges the claim."[15] And here, Barnes's insurer sent Plaintiffs' counsel a check for $25,000, which represented the policy limits and stated that it was "FULL AND FINAL PAYMENT FOR BODILY INJURY CLAIM." To be sure, Plaintiffs' counsel responded that he was not accepting the check as a discharge of his clients' claims and initially offered to return the check. But he never did so and, instead, deposited the check in his firm's escrow account. And although Plaintiffs argue that there was no accord and satisfaction of their claims because the check was deposited into their counsel's escrow account rather than their own account, they cite no authority supporting that such a distinction is dispositive. Given these circumstances, the depositing of the $25,000 check by Plaintiffs' counsel amounted to an accord and

[15] *Rabenstein v. Cannizo*, 244 Ga. App. 107, 107 (534 SE2d 847) (2000); *accord Wade v. Crannis*, 209 Ga. App. 501, 503 (2) (433 SE2d 669) (1993); *Hardigree v. McMichael*, 181 Ga. App. 583, 583 (1) (353 SE2d 78) (1987).

10

satisfaction, discharging Plaintiffs' claims against Barnes.[16] Accordingly, for this additional reason, the trial court erred in denying Barnes's motion to enforce settlement.

For all these reasons, we reverse the trial court's order denying Barnes's motion to enforce settlement.

*Judgment reversed. Markle and Hodges, JJ., concur.*

---

[16] *See Anderson v. Shelby Mut. Ins. Co.*, 237 Ga. 687, 689 (229 SE2d 462) (1976) (holding that when an insurance company offered to settle a damage suit and tendered its drafts and releases, and the plaintiffs did not expressly accept the offer as made but took the money, the plaintiffs were nevertheless bound to the terms of the settlement); *Progressive Cas. Ins. Co. v. Evans*, 276 Ga. App. 594, 596 (623 SE2d 767) (2005) (finding that plaintiff's acceptance of check, marked "full and final payment" was an accord and satisfaction with regard to all obligations between parties, regardless of whether there was a meeting of the minds as to settlement terms); *Rabenstein*, 244 Ga. App. at 109 (holding that the delivery and plaintiff's acceptance of a check stating on its face that it constitutes final settlement of a claim, whether the amount of the claim is established or uncertain, amounts to an accord and satisfaction which discharges the claim); *see also Nugent v. Myles*, 350 Ga. App. 442, 448-49 (2) (829 SE2d 623) (2019) (finding that fact that settlement check had been deposited into plaintiff's counsel's escrow account constituted evidence that plaintiff relinquished her claims).

11