### A07A1972. IN RE ESTATE OF HUFF.
(652 SE2d 203)

BLACKBURN, Presiding Judge.

Liberty Mutual Insurance Company appeals from the denial of its motion to enforce a settlement agreement and its petition for declaratory judgment, contending that the trial court erred in ruling that Liberty had not reached a settlement agreement with the estate of Harlan E. Huff. Because there was evidence to support the trial court's finding that the estate had not entered into the proposed settlement agreement with Liberty, we affirm.

"On a motion to enforce a settlement agreement, we construe the evidence to uphold the trial court's judgment. We will not disturb a trial court's findings thereon unless clearly erroneous." (Citation and punctuation omitted.) *Griffin v. Wallace.*[1] We note that Liberty disputes this standard of review, arguing that, because the trial court conducted a hearing, as opposed to a bench trial, the motion was analogous to a motion for summary judgment, requiring a de novo review. However, because the question here turns on a factual issue resolved by the trial court after considering evidence presented and admissions made by attorneys as to the status of the settlement agreement, we treat resolution of such factual issues as subject to the "clearly erroneous" standard of review. See *Peacock v. Spivey*[2] ("[o]n a motion to enforce a settlement agreement, we . . . will not disturb a trial court's findings thereon unless clearly erroneous") (punctuation

---

[1] *Griffin v. Wallace*, 260 Ga. App. 857 (581 SE2d 375) (2003).
[2] *Peacock v. Spivey*, 278 Ga. App. 338, 340 (2) (629 SE2d 48) (2006).

omitted). Under this standard we will uphold the trial court's factual findings if there is any evidence to support them. *Morrow v. Vineville United Methodist Church.*[3]

So construed, the record shows that in December 2002, as Harlan Huff was driving with son Josh Huff in the car, their vehicle was in a single-car crash which killed Harlan and seriously injured Josh. Harlan's wife Patricia served as the executrix of Harlan's estate. After Liberty (Harlan's insurance carrier) did not satisfy Josh's time-limited demands for payment of the $100,000 policy limit of Harlan's insurance, Josh sued the estate in federal court, ultimately winning a verdict of $300,000, which was reduced to $278,806.40.

During the federal litigation, Josh's attorney communicated with the estate's attorney, seeking assignment of a potential bad faith claim against Liberty. Refusing to assign Josh the bad faith claim, the estate entered into discussions with Liberty to settle the bad faith claim for $15,000. As a result, Josh filed a petition to revoke letters testamentary and to appoint a new administrator of Harlan's estate.

During the estate's settlement negotiations with Liberty, the estate's attorney went on maternity leave, and the probate court continued the hearing on Josh's petition, restricting the estate and Liberty from any further action as to settlement of the bad faith claim. After the estate's attorney returned and informed Liberty that the estate's executrix did not intend to execute a draft settlement agreement, Liberty petitioned for declaratory judgment to recognize the purported settlement agreement and filed a motion to enforce the settlement agreement. After a hearing attended by attorneys for Josh, the estate, and Liberty, the probate court denied Liberty's petition and motion, ruling that the estate and Liberty had never finalized their settlement with respect to the bad faith claim. Liberty now appeals.

Liberty contends that, prior to the stay imposed by the probate court, Liberty's attorney and the estate's attorney had reached a settlement agreement over the phone, which was reflected by an unexecuted draft settlement agreement. In support of this contention, Liberty points to (i) an affidavit by its attorney that he reached an agreement with the estate's attorney during their negotiations and (ii) admissions made by attorneys for Liberty and the estate during the hearing that, although the executrix had not signed the settlement agreement, they thought they had reached an agreement on the phone prior to the stay. For example, the estate's attorney stated:

---

[3] *Morrow v. Vineville United Methodist Church*, 227 Ga. App. 313, 317 (2) (489 SE2d 310) (1997).

> We do believe that an agreement was negotiated in good faith and reached. We had — I think that we had — [Liberty's counsel will] have to refresh my recollection, but I think that our negotiations as far as the specific language in the agreement was still in draft form, but I think that substantively, we were — we had reached an agreement.

Although these statements were not sworn testimony, the probate court apparently accepted them as evidence or admissions of what took place during the settlement negotiations. Cf. *Ga. Bldg. Svcs. v. Perry*[4] ("[a]ttorneys are officers of the court and their statements in their place, if not objected to, serve the same function as evidence") (punctuation and emphasis omitted).

However, this evidence conflicted with admissions in judicio in the estate's March 2007 response to Josh's petition to revoke letters testamentary and to appoint a new administrator, which stated as follows:

> Executrix Patricia Huff admits that Petitioner repeatedly requested [an] assignment of a bad faith claim since 2003. Executrix Patricia Huff further admits that following the trial referenced above [the federal trial], Executrix Patricia Huff participated in a good faith negotiation of the bad faith claim with Liberty Mutual (which negotiation was restricted by Order of this Court dated July 14, 2006). After Petitioner's continued dogged pursuit of the assignment, Executrix Patricia Huff offered to assign the bad faith claim to Petitioner, but said offer was refused on October 25, 2006.

These admissions, particularly that the negotiation was restricted by the probate court's order, and that the estate subsequently offered to assign the bad faith claim *after* the alleged settlement, are evidence that the estate never reached a final settlement of the bad faith claim. Moreover, the marked up draft of the settlement agreement showed the parties were still negotiating its terms, and the estate's attorney admitted to the probate court that the agreement was never finalized. Accordingly, there was evidence before the probate court showing that the bad faith claim had not in fact settled. Compare *Stookey v. Stookey*[5] (reversing trial court's refusal to enforce settlement agreement where there was no conflict in the evidence showing that attorneys had agreed to a settlement).

---

[4] *Ga. Bldg. Svcs. v. Perry*, 193 Ga. App. 288, 300 (6) (387 SE2d 898) (1989).
[5] *Stookey v. Stookey*, 274 Ga. 472, 473 (1) (554 SE2d 472) (2001).

After considering the evidence of record, the probate court resolved this factual issue adversely to Liberty. As there was evidence to support the probate court's determination that the settlement agreement was not finalized, we discern no clear error. Moreover, we note that "where the very existence of [a settlement] agreement is disputed, it may only be established by a writing." (Punctuation omitted.) *Reichard v. Reichard.*[6] As there was no executed writing here, and some evidence supported the trial court's finding that no agreement existed, we affirm.

*Judgment affirmed. Ruffin and Bernes, JJ., concur.*

DECIDED SEPTEMBER 21, 2007 — 

*Robins, Kaplan, Miller & Civesi, Brent J. Kaplan,* for appellant.
*Robert H. Benfield, Jr., Michael L. Neff,* for appellee.

---

[6] *Reichard v. Reichard,* 262 Ga. 561, 564 (2) (423 SE2d 241) (1992).