**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 13, 2019**

# In the Court of Appeals of Georgia

A19A0162. NUGENT et al. v. MYLES.
A19A0871. WARREN v. MYLES.

MARKLE, Judge.

These appeals proceed from the trial court's orders on opposing motions for partial summary judgment in an action for legal malpractice and other torts. Alexandra Myles sued Kenneth S. Nugent, Kenneth S. Nugent, P. C., and Nugent Law Firm, LLC (collectively, "Nugent"), along with her attorney, Christopher Warren,[1] for allegedly failing to litigate, and ultimately settling without her consent, her claims arising from an automobile collision with a City of Smithville ("City") employee. In Case No. A19A0162, Nugent appeals the trial court's denial of its

---

[1] Warren was employed by Kenneth S. Nugent, P. C. The trial court deferred ruling on dismissing Nugent Law Firm, LLC until discovery closed, and that issue is not before us.

motion for partial summary judgment on the issue of the legality of the engagement contract between Kenneth S. Nugent, P. C. ("Nugent, P. C.") and Myles; and the grant of Myles's motion for partial summary judgment, finding that Myles's underlying personal injury claims against the City were settled in full. In Case No. A19A0871, Warren appeals the trial court's order as to the settlement issue only. We consolidated the cases for our review. Finding no error in Case No. A19A0162, we affirm. We likewise affirm the trial court's order in Case No. A19A0871.

> Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. In reviewing the grant or denial of a motion for summary judgment, we apply a de novo standard of review, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation omitted.) *Grizzle v. Norsworthy*, 292 Ga. App. 303, 303–304 (664 SE2d 296) (2008).

So viewed, the record reflects that, in January 2011, Myles was injured in a vehicle collision with a City employee. Days later, Myles retained Nugent, P. C. to litigate her claims arising from the collision, and signed an engagement contract. The firm assigned one of its attorneys, Warren, to represent Myles.

2

In March 2011, Warren sent an ante litem notice to the City, as required by OCGA § 36-33-5. In December 2011, Warren sent the City's insurance adjuster a demand letter, indicating that Myles's total medical expenses were $10,327.76. Warren and the adjuster negotiated a potential settlement throughout the latter half of 2012, and, in January 2013, the adjuster made an offer in the amount of $10,000.

In March 2013, Warren met with Myles to discuss the pending offer, which Myles expressly rejected. During this meeting, Warren realized that he made a mistake and had not filed a complaint before the two-year statute of limitations had run.[2] Warren advised Myles that there had been a mistake and ended the meeting. Warren then notified Kenneth Nugent of his error.

Despite Myles's refusal to settle, and without her permission, a week later, Warren accepted an offer in the amount of Myles's medical expenses, $10,327.76. Warren asked the adjuster to issue the check immediately, which she did, along with a release of the claims for Myles to sign and return. The check indicated that it was for "full and final settlement of all bodily injury claims," whereas the release covered all claims arising from the accident, including personal injury and property damage.

---

[2] Warren was likely mistaken as to the claims against the City because the limitations period was "suspended during the time that the demand for payment [was] pending." OCGA § 36-33-5 (d).

3

Unaware that Warren had accepted the settlement, Myles hired new counsel and terminated Warren and Nugent's representation on March 29, 2013. However, in June 2013, Nugent P. C. deposited the check into its escrow account. It is undisputed that Myles did not endorse the check, but that someone at Nugent P. C. signed her name to it. The release was never signed.

Myles sued Nugent and Warren, bringing fifteen claims against them, including legal malpractice, Georgia RICO Act violations, conspiracy, conversion, forgery, fraud and breach of fiduciary duty.[3] Viewed in its entirety, the complaint, as amended, attacks Nugent's business model, including its advertising practices and, as Myles repeatedly characterizes it, the "illegal" engagement contract.

In response to this description of the engagement contract, Nugent moved for partial summary judgment, seeking a determination that the engagement contract was legal. Myles moved for partial summary judgment, seeking a ruling that Warren had settled and released her claims against the City and its employee. Following a

---

[3] Specifically, in an amended complaint that exceeds two hundred pages and contains 911 paragraphs, Myles brought claims for conspiracy; joint venture (against Nugent); respondeat superior (against the firms); civil RICO Act violations; fraud; breach of fiduciary duty; conversion; professional negligence and gross professional negligence; negligent training and supervision and gross negligent training and supervision (against Nugent); injunctive relief (against Nugent); damages; punitive damages; and attorney's fees pursuant to OCGA §§ 13-6-11 and 16-14-6.

4

hearing, the trial court denied partial summary judgment to Nugent, and granted

partial summary judgment to Myles on the ground that Warren had settled Myles's

case. These appeals followed.

*Case No. A19A0162*

1. Nugent argues that the trial court erred when it denied Nugent's motion for

partial summary judgment on the ground that it was not a proper vehicle to decide

whether the fee contract was legal.[4] We discern no error.

(a) OCGA § 9-11-56 (d) provides:

> If on motion under this Code section judgment is not rendered upon the
> whole case or for all the relief asked and a trial is necessary, the court at
> the hearing of the motion, by examining the pleadings and the evidence
> before it and by interrogating counsel shall, if practicable, ascertain what
> material facts exist without substantial controversy and what material
> facts are actually and in good faith controverted. It shall thereupon make
> an order specifying the facts that appear without substantial controversy,
> including the extent to which the amount of damages or other relief is

---

[4] Myles contends that we lack jurisdiction to consider this issue because Nugent did not follow the interlocutory appeal provisions of OCGA § 5-6-34 (b). This issue is properly before us, however, because Nugent also appeals the grant of partial summary judgment to Myles, which is directly and immediately appealable pursuant to OCGA § 9-11-56 (h). See *Sotter v. Stephens*, 291 Ga. 79, 84 (727 SE2d 484) (2012) ("when a direct appeal is taken, any other judgments, rulings or orders rendered in the case and which may affect the proceedings below may be raised on appeal and reviewed and determined by the appellate court.") (citation omitted).

not in controversy, and directing such proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

Pursuant to OCGA § 9-11-56 (b), a party may move for summary judgment "as to all or any part" of a claim. Thus, under these code sections, "a movant can elect to move for a whole or a partial summary judgment." (Citation omitted.) *Kuruvila v. Mulcahy*, 264 Ga. App. 626, 627 (2) (591 SE2d 491) (2003). However, this provision "does not authorize the initiation of motions the sole object of which is to adjudicate issues of fact which are not dispositive of any claim or part thereof." *Robinson v. Franwylie, Inc.*, 145 Ga. App. 507, 509 (1) (244 SE2d 73) (1978); see also *Planet Ins. Co. v. Ferrell*, 228 Ga. App. 264, 265 (491 SE2d 471) (1997). In other words, "[a] motion for summary judgment is designed to test the merits of a *claim*." (Citation omitted; emphasis supplied.) *Forest City Gun Club v. Chatham County*, 280 Ga. App. 219, 221 (633 SE2d 623) (2006).

Here, Nugent moved for partial summary judgment, asking the trial court to declare that the engagement contract was legal. Because there was no breach of contract claim raised in the amended complaint, and because the motion failed to address any specific pending *claim*, the trial court found that Nugent was seeking an impermissible advisory opinion on the legality of the engagement contract. Notably,

6

in its brief before the trial court, Nugent acknowledged that "the issue of an alleged 'illegal contract'. . . is not remotely relevant to any issue to be decided in this case and is the quintessential red-herring." Nugent then recognized that Myles's action "has nothing to do with the enforceability of a contract," and that, even if the contract is illegal, it would "not give rise to a separate tort cause of action or criminal indictment." Moreover, twice during the oral argument below, the trial court asked Nugent's counsel to name the claims to be affected by a ruling on the motion. And, twice, counsel failed to identify any specific claim.

Thus, Nugent's motion sought only a ruling that the engagement contract was legal, but not a judgment that would be dispositive of any of Myles's claims. And, because Nugent did not seek to dispose of any claim, in whole or in part, Nugent's motion for partial summary judgment was not properly before the trial court. See *Forest City Gun Club*, 280 Ga. App. at 221-222 (a ruling on the proper method of valuation in a condemnation case was not a viable grant of partial summary judgment because it did not reach "the merits of any element of damage"); *St. Francis Hosp., Inc. v. Patton*, 228 Ga. App. 544 (1) (492 SE2d 303) (1997) (in litigation arising from termination of a doctor's hospital privileges, a determination that the hospital had breached its by-laws was not a proper grant of partial summary judgment because it

7

was "not a ruling that [the doctor] was entitled to recover on his claim."). Accordingly, we find no error in the trial court's denial of Nugent's motion.

(b) Before this Court, Nugent explains for the first time that a determination of the legality of the contract would dispose of three claims, namely, the claims for fraud in the inducement, breach of fiduciary duty, and injunctive relief.

> The purpose behind summary judgment is to dispose of litigation expeditiously and avoid useless time and expense to go through a jury trial. This purpose is thwarted when a party may withhold meritorious legal arguments until appeal. Allowing a party to raise new arguments also ignores the duties and responsibilities placed on the parties by OCGA § 9-11-56. Each party has a duty to present his best case on a motion for summary judgment.

(Citation omitted.) *Lafontaine v. Alexander*, 343 Ga. App. 672, 682 (7) (808 SE2d 50) (2017). "Fairness to the trial court and to the parties demands that legal issues be asserted in the trial court." *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002); see also *Lowery v. Atlanta Heart Assoc., P. C.*, 266 Ga. App. 402, 404 (2) (597 SE2d 494) (2004) (declining to consider argument not raised in trial court). Moreover, as "this Court is a court for the correction of errors of law committed in the trial court[,] . . . absent special circumstances, this Court need not consider arguments raised for the first time on appeal." (Citations and punctuation

8

omitted.) *Lafontaine*, 343 Ga. App. at 682 (7). Accordingly, we decline to consider this argument.

2. Nugent next argues that the trial court erred when it found the underlying case was settled and released as to the City. Nugent contends that there is a question of fact as to whether there was a meeting of the minds on each essential term of the purported settlement agreement because the amount was uncertain and it was unclear whether it covered all claims. We disagree.

At the outset, we note that Myles's motion for partial summary judgment on this discrete issue is not subject to the same outcome as that of Nugent's motion in Division 1 (a) because this issue is dispositive of many of her claims. See *Robinson*, 145 Ga. App. at 509 (1).

With regard to settlement agreements, generally,

> [u]nder Georgia law, an agreement alleged to be in settlement and compromise of a pending lawsuit must meet the same requisites of formation and enforceability as any other contract. In this regard, it is well settled that an agreement between two parties will occur only when the minds of the parties meet at the same time, upon the same subject matter, and in the same sense. . . . Acceptance of an offer must be unconditional, unequivocal, and without variance of any sort; otherwise, there can be no meeting of the minds and mutual assent necessary to contract formation.

(Citations and punctuation omitted.) *Durham v. McLaughlin*, 286 Ga. App. 166, 166-167 (648 SE2d 495) (2007).

It is well settled in Georgia that "an attorney of record has apparent authority to enter into an agreement on behalf of his client and the agreement is enforceable against the client by other settling parties." *Brumbelow v. Northern Propane Gas Co.*, 251 Ga. 674 (308 SE2d 544) (1983). Unless an opposing party is aware of limitations on an attorney's authority, "the opposing party may deal with the attorney as if with the client, and the client will be bound by the acts of his attorney within the scope of his apparent authority." Id. at 675; see also *Clark v. Perino*, 235 Ga. App. 444, 448 (2) (509 SE2d 707) (1998) (opposing parties and the court may consider this authority plenary "unless it is limited by the client and that limitation is communicated to opposing parties.") (citation omitted). Importantly, "[t]he client's remedy, where there have been restrictions not communicated to the opposing party, is against the attorney who overstepped the bounds of his agency, not against the third party."[5] *Clark*, 235 Ga. App. at 449 (2).

---

[5] In this respect, it is worth noting that the City's insurance adjuster indicated that her counsel would file a motion to enforce the settlement and seek attorney's fees if Myles pursued any claims arising from the collision against the City or its employee.

Here, Nugent argues that there is a question of fact as to the scope of the claims that were resolved because, in contrast to the broad language of the unsigned release,[6] the check made no reference to the property damage Myles's car sustained or to her potential claims for non-physical, mental harm.[7] Nugent also points to the fluctuating offer amounts and ambiguity with regard to which of Myles's claims were referenced in the adjuster's offer letters and claim notes.

Nugent's position is belied by a close reading of the record. Most notably, Warren repeatedly admitted that he had settled the case on Myles's behalf and considered the claims released. This admission, alone, distinguishes the line of cases

---

[6] The release resolves "any and all claims, demands, damages, costs, expenses, loss of services, actions and causes of action arising from any act or occurrence up to the present time, and particularly on account of all personal injury, disability, property damages, loss or damages of any kind sustained . . ." as a result of the collision.

[7] Citing to *Brayman v. Allstate Ins. Co.*, 212 Ga. App. 96 (441 SE2d 285) (1994), Nugent attempts to distinguish bodily injury claims from "personal injury" claims. We are not persuaded. In *Brayman,* a declaratory action brought by an insurer to determine whether a slander claim was covered as a "bodily injury," we looked to the terms of the insurance policy at issue and found that slander was not a bodily injury *as defined by the policy*. (Emphasis supplied.) Id. at 96 (1). Moreover, "[t]he bodily injuries covered under a liability policy include . . . physical injury, mental distress, lost wages, medical expenses, general damages for pain and suffering, and other damages authorized under the laws of this state which flow from physical injury to a person." Frank E. Jenkins III et al., Georgia Automobile Insurance Law, § 13:5 (2018-2019 ed.).

Nugent cites in support of its proposition that there is a question of fact as to whether there was a meeting of the minds. See, e.g., *Francis v. Chavis*, 345 Ga. App. 641 (814 SE2d 778) (2018) (on a motion to enforce settlement agreement, a genuine issue of material fact existed where there were opposing affidavits as to whether a settlement was reached by the parties); *Penn v. Muktar*, 309 Ga. App. 849 (711 SE2d 337) (2011) (holding there was no settlement where counteroffer was rejected); *In re Estate of Huff*, 287 Ga. App. 614 (652 SE2d 203) (2007) (motion to enforce settlement agreement properly denied where, in the absence of a written agreement, the evidence was conflicting as to whether the settlement agreement was finalized).

As borne out by her affidavit, the adjuster relied on Warren's acceptance of the final offer, and she was entitled to do so.[8] *Brumbelow*, 251 Ga. at 674 (2). Her claim notes further reflect that she considered the claim settled in full once Warren accepted the last offer and requested she issue the check immediately, and that the file would

---

[8] Nugent's argument that the parties were required to negotiate outstanding medical liens pursuant to OCGA § 44-14-473 prior to finalizing a settlement is misplaced. OCGA § 44-14-473 creates a cause of action on behalf of hospitals or other medical facilities to enforce their liens against settlements, covenants not to sue, or judgments. OCGA § 44-14-473 (a); see generally *Hosp. Auth. of Clarke County v. Geico Gen. Ins. Co.*, 294 Ga. 477 (754 SE2d 358) (2014).

be closed upon receipt of the signed release.[9] The notes also show that the file was closed four months after Warren's acceptance, despite the release not being returned.[10] By that point, the check had been cashed and deposited into Nugent, P. C.'s escrow account,[11] indicating Myles had relinquished her claims. See *Rabenstein v. Cannizzo*, 244 Ga. App. 107 (534 SE2d 847) (2000) ("The delivery and acceptance of a check stating on its face that it constitutes final settlement of a claim, whether the

---

[9] In *Walter v. Mitchell*, 294 Ga. App. 689, 690-691 (2) (669 SE2d 706) (2008), we considered an insurance claim representative's letter memorializing the terms of the agreement and found that it supported the trial court's conclusion that the parties had reached a binding settlement.

[10] To the extent that Nugent contends the failure to execute the release evinces a lack of assent between Warren and the adjuster, "an agreement to settle may be enforced in the absence of a formal release where there is evidence that the terms of the agreement were sufficiently finalized and agreed upon. This law is necessary to prevent a party from agreeing to a settlement and later renege on that agreement prior to the signing of a formal release." *Hosp. Auth. of Clarke County*, 294 Ga. at 479.

[11] Nugent argues that the trial court should not have considered facts related to the handling of the settlement check because those actions occurred months after the communications between Warren and the adjuster, were likely made by persons uninvolved in the settlement negotiations, and solely for the purpose of depositing and preserving the funds before the check became void due to passage of time. We note that Nugent cites to no authority to support this position. In light of *Brumbelow*, we consider the handling of the check as it relates to the adjuster's belief that Myles's claims were settled.

amount of the claim is established or uncertain, amount to an accord and satisfaction which discharges the claim.") (citations omitted).

On this record, the trial court properly found that Myles's claims arising from the collision had been settled and released as a matter of law.

*Case No. A19A0871*

3. In Warren's related appeal, the parties fully adopt and incorporate the briefs submitted in Case No. A19A0162 with respect to the issue of whether the trial court erred when it found that Myles's claims had been settled and released. In light of our decision in Division 2 above, the appeal in Case No. A19A0871 is likewise affirmed.

*Judgments affirmed. Doyle, P. J., and Coomer, J., concur.*