**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN and MARKLE, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**May 24, 2023**

# In the Court of Appeals of Georgia

A23A0587. GROVES v. GIBBS.

MARKLE, Judge.

After he was injured in an auto accident in 2021, James Groves hired the Glenda Mitchell law firm ("the firm") to represent him in a suit against the other driver, Jeffrey Gibbs. The firm quickly sent a settlement offer, to which Gibbs made a counter offer of the full amount of insurance for bodily injury in exchange for a limited release. However, Groves refused to sign the release, and instead filed suit against Gibbs. Gibbs answered and asserted the settlement as a defense. Both parties moved for summary judgment, seeking to determine whether a valid settlement agreement existed. The trial court granted Gibbs's motion, finding that there was a valid settlement agreement. Groves now appeals. For the reasons that follow, we vacate the trial court's order and remand the case for further proceedings.

We conduct a de novo review of a trial court's order on both a motion to enforce a settlement agreement and a motion for summary judgment. The issues raised in such motions are analogous. To prevail on either a motion for summary judgment or a motion to enforce a settlement agreement, a party must show the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of the appellant's case.

(Citations and punctuation omitted.) *Anderson v. Benton*, 295 Ga. App. 851, 852 (673 SE2d 338) (2009).

So viewed, the record shows that Groves injured his hip and knee when Gibbs's car struck his vehicle in January 2021. Groves was transported to the hospital, where he required several surgeries. While he was still in the hospital, his mother researched attorneys, and Groves hired the firm.

About a week after the accident, the firm sent a demand letter to Gibbs's insurer, State Farm Mutual Automobile Insurance Company. In the letter, the firm offered to settle all bodily injury and property damage claims for the insurance policy limits.[1] The demand also required State Farm to submit an affidavit verifying

---

[1] Under OCGA § 9-11-67.1 (a) (2013), if a party makes an offer to settle tort claims arising from auto accidents, the offer must be in writing and contain:

coverage, as well as an affidavit from Gibbs that he had no other available insurance. State Farm then retained counsel on Gibbs's behalf ("defense counsel") for purposes of negotiating a settlement.

In response to the firm's letter, defense counsel sent a letter offering to tender the policy limits for bodily injury only, in exchange for a limited liability release, and

---

(1) The time period within which such offer must be accepted, which shall be not less than 30 days from receipt of the offer;

(2) Amount of monetary payment;

(3) The party or parties the claimant or claimants will release if such offer is accepted;

(4) The type of release, if any, the claimant or claimants will provide to each releasee; and

(5) The claims to be released.

Although this statute has since been amended, the amended version was not effective until after the settlement negotiations in this case occurred. See OCGA § 9-11-67.1 (d) (effective July 2021). In this case, it is irrelevant whether defense counsel complied with the conditions set forth in the firm's written offer to settle because the parties agree that there was a counter offer. Thus, this case does not present an issue of bad faith refusal to settle by State Farm.

it attached a proposed release form that excluded any property damage claims. The letter also referenced the affidavits the firm had requested, stating that it should have them soon. Over the next few weeks, the firm continued to communicate with defense counsel about the affidavits, but it made no mention of the proposed release form.[2] By the end of February, State Farm had issued the check for the policy limit of $100,000, and shortly thereafter defense counsel forwarded the requested affidavits by e-mail. The firm never deposited the check.

On February 22, the firm sent Groves's mother a text message with the terms of the proposed settlement.[3] There apparently was no other communication between Groves and the firm, and Groves knew nothing about the demand or settlement until the text message. After his mother received the text, Groves met with someone at the firm, who instructed him to sign the release because the firm had settled his case.

---

[2] Specifically, defense counsel sent the counter offer and proposed release on February 19. On February 22, the firm e-mailed defense counsel asking about the affidavits. Defense counsel responded that they were working on it. The firm sent another inquiry regarding the affidavits on March 1, and defense counsel forwarded the affidavits that same day. No other communication between the attorneys appears in the record until March 11, when the firm notified defense counsel that Groves had terminated its representation.

[3] Although it does not appear in the record, at the hearing, the parties agreed that Groves's mother received this text explaining the payout from the settlement offer.

Groves refused to sign and terminated the representation. After obtaining new counsel, Groves filed the instant suit against Gibbs.

In his answer, Gibbs asserted the defenses of release and settlement. Groves then moved for partial summary judgment to establish that there was no settlement agreement. Gibbs filed a cross-motion for summary judgment, seeking to enforce the settlement agreement.

At the hearing, Groves admitted that the firm had apparent authority to enter into a settlement, but he argued that there was no valid contract because there was no evidence the firm communicated acceptance of the counter offer to defense counsel.[4] Rather, according to Groves, the evidence showed instead that the settlement was never consummated. In response, Gibbs pointed to e-mail correspondence between defense counsel and the firm to show that there was a valid acceptance based on course of conduct. The trial court concluded that there was evidence the firm accepted

[4] It is well settled that, unless the opposing party has knowledge otherwise, an attorney of record has apparent authority to settle a case on the client's behalf, and the client will be bound by the settlement agreement. See, e.g., *Brumbelow v. N. Propane Gas Co.*, 251 Ga. 674 (308 SE2d 544) (1983); see also *Blanton v. Crump Heating & Air*, 345 Ga. App. 488, 490 (811 SE2d 125) (2018). In such cases, the client's remedy, if any, is against the attorney. *Brumbelow*, 251 Ga. at 675; see also *Progressive Mountain Ins. Co. v. Butler*, 364 Ga. App. 439 (875 SE2d 422) (2022).

the counter offer, and, thus there was a valid settlement. Accordingly, the court granted Gibbs's motion to enforce the settlement. Groves now appeals.

In related arguments, Groves contends that, given his refusal to sign the release form, there was no valid settlement because there was no objective acceptance communicated to defense counsel regarding its counter offer. He notes that it is irrelevant whether the firm told *him* the case had been settled; what is relevant is whether the acceptance was communicated *to defense counsel*, and there was no evidence it was. We agree.

> Under Georgia law, an agreement alleged to be in settlement and compromise of a pending lawsuit must meet the same requisites of formation and enforceability as any other contract. In this regard, it is well settled that an agreement between two parties will occur only when the minds of the parties meet at the same time, upon the same subject matter, and in the same sense. An answer to an offer will not amount to an acceptance, so as to result in a contract, unless it is unconditional and identical with the terms of the offer. To constitute a contract, the offer must be accepted unequivocally and without variance of any sort. No contract exists until all essential terms have been agreed to, and the failure to agree to even one essential term means there is no agreement to be enforced. In determining if parties had the mutual assent or meeting of the minds necessary to reach agreement, courts apply an objective theory of intent whereby one party's intention is deemed to be

6

> that meaning a reasonable person in the position of the other contracting party would ascribe to the first party's manifestations of assent.

(Citations omitted.) *Wright v. Nelson*, 358 Ga. App. 871, 874 (856 SE2d 421) (2021); see also *Barnes v. Martin-Price*, 353 Ga. App. 621, 623-624 (1) (838 SE2d 916) (2020).

Here, the parties concede that there was no acceptance of the initial demand letter, and that defense counsel made a counter offer to tender the policy limit in exchange for a limited liability release.[5] See *Penn v. Muktar*, 309 Ga. App. 849, 850-851 (711 SE2d 337) (2011) (insurer's response to offer to settle that contained different terms in release was counter offer). The parties dispute, however, whether the firm accepted the counter offer.[6]

---

[5] Because Gibbs did not own the vehicle he was driving at the time of the accident, he could not settle the property damage claims as part of Groves's demand, and instead defense counsel made the counter offer to settle only the bodily injury claims.

[6] Although Gibbs contends that this issue was not properly raised before the trial court, that argument is without merit. Groves did raise this argument, and at the hearing, Gibbs agreed that this was the issue before the court. The trial court then addressed it in the order, which was drafted by Gibbs's counsel. *Liberty v. Storage Trust Properties*, 267 Ga. App. 905, 911 (2) (600 SE2d 841) (2004) (issue properly before this Court on appeal where it was raised at the summary judgment hearing); compare *Whitcomb v. Bank of America, N. A.*, 365 Ga. App. 795, 797-798 (1) (880 SE2d 310) (2022) (party waived argument by failing to raise it in briefs or at

In Georgia, "an offer may be accepted either by a promise to do the thing contemplated therein, or by the actual doing of the thing. And if an offer calls for an act, it can be accepted only by the doing of the act." (Citations and punctuation omitted.) *Barnes*, 353 Ga. App. at 624 (1); see *Nugent v. Myles*, 350 Ga. App. 442, 448-449 (2) (829 SE2d 623) (2019) (acceptance of settlement where counsel deposited settlement check into escrow account). Moreover,

> the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement. A contract may arise through a course of conduct[,] and mutual acquiescence in such course of conduct may constitute sufficient consideration for that contract.

(Citations omitted.) *Netsoft Assoc. v. Flairsoft, Ltd.*, 331 Ga. App. 360, 363 (771 SE2d 65) (2015).

Applying an objective theory of intent, the communications between the firm and defense counsel would not lead defense counsel to believe the firm had accepted the counter offer. *Wright*, 358 Ga. App. at 874. Instead, the firm's communications continued to inquire into the whereabouts of the requested affidavits, leading to the conclusion that the counter offer was still being considered. Cf. *Bennett v. Novas*, 364

summary judgment hearing, and trial court did not address it).

8

Ga. App. 364, 367-368 (a) (874 SE2d 871) (2022) (in response to offer to settle, asking if another party could be added to release was not acceptance); *Ligon v. Hu*, 363 Ga. App. 251, 253 (2) (870 SE2d 802) (2022) (no binding settlement where party failed to comply with terms of offer); *Turner v. Williamson*, 321 Ga. App. 209, 213 (1) (738 SE2d 712) (2013) (communications that did not unequivocally agree to terms of settlement offer could not be construed as acceptance); *Penn*, 309 Ga. App. at 850-851 (no settlement where counter offer was rejected); *In re Estate of Huff*, 287 Ga. App. 614, 615-617 (652 SE2d 203) (2007) (denial of motion to enforce settlement where there was conflicting evidence as to whether the settlement agreement was finalized); see also *Frickey v. Jones*, 280 Ga. 573, 574 (630 SE2d 374) (2006) ("the offer must be accepted unequivocally and without variance of any sort") (citation and punctuation omitted).

Additionally, the firm's communications made no reference to the terms of the proposed release, and the firm never negotiated the settlement check. The only evidence aside from the e-mail communications is Groves's concession that the firm told *him* it had reached a settlement. But discussions between an attorney and the client has never been sufficient to establish acceptance, and there is *nothing* showing that the firm communicated Groves's acceptance *to defense counsel*. See *Pargar, LLC*

9

*v. CP Summit Retail*, 316 Ga. App. 668, 673 (730 SE2d 136) (2012) ("[w]e look for the intent of the parties as objectively manifested in what they have communicated *to one another* rather than their unexpressed subjective intent.") (emphasis in original). Notably, the record contains no affidavits from State Farm's representative, defense counsel, or from the firm, and there is no acknowledgment in the record that the counter offer had been accepted. Compare *Nugent*, 350 Ga. App. at 448 (2) (attorney's own testimony was evidence of acceptance). Simply put, the scant record before us does not establish as a matter of law that the firm unequivocally accepted the counter offer and communicated such acceptance to defense counsel. Accordingly, we are constrained to vacate the trial court's order granting the motion to enforce the settlement, and remand the case for further proceedings consistent with this opinion.

*Judgment vacated, and case remanded. McFadden, P. J., and Brown, J., concur*.