**THIRD DIVISION**
**DOYLE, P. J.,**
**GOBEIL, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**November 17, 2023**

# In the Court of Appeals of Georgia

A23A1199. SAVANNAH STATE UNIVERSITY FOUNDATION, INC. et al. v. LEWIS et al.

FULLER, Senior Judge.

In this action for premises liability, nuisance, and related claims, defendants Savannah State University Foundation, Inc. (the "Foundation"), and Savannah State University Foundation Real Estate Ventures, LLC (the "LLC"), appeal from the denial of their motion for summary judgment. They contend that they are not subject to liability in this case because neither entity possessed or controlled the premises at issue. Because this case is controlled by our recent decision in *Starks v. USG Real Estate Foundation III*, 361 Ga. App. 406 (864 SE2d 621) (2021) — which addressed a strikingly similar scenario — we agree and reverse.

"We review de novo a grant or denial of summary judgment, viewing the evidence and all reasonable conclusions and inferences drawn from it in the light most favorable to the nonmovant." *Henry v. Griffin Chrysler Dodge Jeep Ram*, 362 Ga. App. 459, 460 (868 SE2d 827) (2022). So viewed, the record shows that Donald Lewis died after he was shot while visiting friends in student housing known as the University Village on the Savannah State University ("SSU") campus in September 2013. Donald did not attend SSU. In 2018, his mother Konshitera Lewis ("Lewis"), individually and as administrator of his estate, sued the LLC and the Foundation for negligence, nuisance, and related claims based on his death.

The LLC is a not-for-profit limited liability company created to facilitate financial transactions for SSU without the State of Georgia incurring debt. The Foundation — the LLC's only member — is a not-for-profit philanthropic organization that accepts and disburses gifts on behalf of SSU. In 2000, the Board of Regents of the University System of Georgia leased land it owned on the SSU campus to The University Financing Foundation, Inc. ("TUFF"), which then built the University Village student housing on that land. In 2008, the LLC acquired the University Village buildings from TUFF, assumed TUFF's ground lease of the underlying property, and entered into an amended ground lease for the property with

2

the Board of Regents. The LLC then leased the property and University Village buildings back to the Board of Regents for an initial four-month term and up to 24 renewable one-year terms, beginning in February 2008. Pursuant to that lease agreement, SSU — a member of the Board of Regents — makes rental payments to the LLC. The LLC delivered possession of the property to the Board of Regents at the beginning of the first term under that lease agreement, which has been renewed each year since then, during which time SSU has remained in possession of the property. The LLC has no authority to control access to the University Village property.

Following discovery in the current lawsuit, the defendants moved for summary judgment, contending primarily that they cannot be liable for Donald's death because neither defendant was in control or possession of the property where he was shot. The trial court denied the motion on grounds that issues of fact remain as to: (i) whether the defendants retained possession and control of the premises; and (ii) whether liability may be premised on the defendants' duty to repair and keep the premises safe. The trial court subsequently issued a certificate of immediate review, after which we granted the defendants' application for interlocutory appeal.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.

3

> The burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the movant meets this burden, the nonmovant cannot rest on [her] pleadings, but rather must point to specific evidence giving rise to a triable issue.

*Henry*, 362 Ga. App. at 460-461 (citations and punctuation omitted); see OCGA § 9-11-56 (c), (e).

1. The defendants contend that the LLC cannot be liable for Donald's death because it is an out-of-possession landlord. Given our recent decision in *Starks*, 361 Ga. App. 406 — which similarly addressed the liability of a non-profit limited liability company formed to facilitate Board of Regents transactions involving property on Georgia college campuses, including SSU, and which Lewis and the trial court have failed to distinguish — we agree.

> Generally, a landowner has a duty to keep its premises safe for visitors, and this duty depends, to a certain extent, on whether the one entering the property is an invitee, a licensee or a trespasser. This duty is partially codified in OCGA § 51-3-1, which provides: "Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe."

4

Liability under OCGA § 51-3-1 may arise when an owner or occupier of land has personal charge of or exercises the right of management or control over the property in question.

*Starks*, 361 Ga. App. at 409 (1) (citations and punctuation omitted).

When the property owner is a landlord who has ceded possession of the property to a tenant, however, "the landowner's control over the property and the concomitant ability to make the property safe becomes limited. In such instances, a landlord's liability to a third person who is injured on property which was relinquished by rental or under a lease is determined by OCGA § 44-7-14." *Starks*, 361 Ga. App. at 409 (1) (citations and punctuation omitted). That statute provides:

Having fully parted with possession and the right of possession, the landlord is not responsible to third persons for damages resulting from the negligence or illegal use of the premises by the tenant; provided, however, the landlord is responsible for damages arising from defective construction or for damages arising from the failure to keep the premises in repair.

OCGA § 44-7-14. Neither defective construction nor a failure to keep the premises in repair is at issue in this case.

The rationale is that the use of the tenements really belongs to the tenant during the lease; they are his property to use for the term for which they are rented; and the landlord has no right to enter upon them,

5

except by permission of the tenant, during the term for which they are rented. To rule otherwise, i.e., to impose liability on a landlord for the negligent acts of his tenant, would yield a harsh and unwanted rule. Accordingly, this Court has held that a landlord's right to inspect is not the equivalent of the right to possess premises, so as to make the landlord liable under OCGA § 44-7-14. Indeed, landlords still fully part with possession of leased premises when they retain limited entry or inspection rights for landlord-related purposes. This is so because a landlord's retention of the right to enter the leased premises for landlord-related purposes does not evidence such dominion and control of the premises so as to vitiate the landlord's limited liability imposed by OCGA § 44-7-14 and replace it with the liability imposed by OCGA § 51-3-1, the premises liability statute upon which [this] action is based.

*Starks*, 361 Ga. App. at 410 (1) (citations and punctuation omitted).

Here, the relevant rental agreement (in which the LLC leases the property and buildings back to the Board of Regents) expressly grants to the Board of Regents the right to "lawfully, quietly and peacefully have, hold, use, possess, enjoy, and occupy the Premises for the [rental term] without any suit, hindrance, interruption, inconvenience, eviction, ejection, or molestation by the [LLC] or by any other person or persons whatsoever." And the agreement gives the Board of Regents the right to terminate the lease if (a) it is deprived of its "right to lawfully, quietly and peacefully have, hold, use, possess, enjoy and occupy the Premises, for any reason whatever";

6

or (b) the LLC is "unable to deliver possession of the Premises" to the Board of Regents at the beginning of the lease term. The agreement also requires the Board of Regents to permit the LLC (or its agents or employees) to enter the property "at all reasonable times for the purpose of inspecting the Premises or . . . maintaining or making repairs[,] alterations or additions" thereto. But that right of entry is limited, as it "shall not interfere with [the Board of Regents'] business or quiet use and enjoyment of the Premises."

Under these provisions, there "is no evidence that [the LLC] contractually undertook to remain in possession of" any parts of the premises. *Lake v. APH Enterprises*, 306 Ga. App. 317, 320 (702 SE2d 654) (2010). Rather, "the use of the tenements really belongs to the tenant during the lease." *Starks*, 361 Ga. App. at 410 (1) (citation and punctuation omitted). Further, the LLC's "retention of the right to enter the leased premises for landlord-related purposes" — i.e., maintenance, repairs, alterations, or additions — does not establish a level of "dominion and control of the premises so as to vitiate the [LLC's] limited liability imposed by OCGA § 44-7-14." Id. (citation and punctuation omitted). The lease provisions instead show that the LLC is an out-of-possession landlord that has "fully parted with possession and the right of possession." OCGA § 44-7-14.

7

In concluding otherwise, the trial court made several critical mistakes. First, the court misread the record when it found that the defendants "engaged" SSU and its public safety department to "provid[e] security." Notably, none of the record excerpts it cites support that finding. To the contrary, SSU's vice president for advancement deposed that SSU's police department was responsible for providing security for the University Village apartments and that neither the LLC nor the Foundation were involved in public safety on campus. And while SSU's vice president for business and financial affairs (who also served as a manager of the LLC) deposed that SSU's police department reported certain incidents to him beginning in May 2012, his testimony as a whole unambiguously establishes that such reports came to him in his capacity as university vice president and not as LLC manager. Notably, he also testified that the LLC "did not take any steps to provide security," which was "the responsibility of the police department."

Second, the trial court similarly misread the record when it concluded that the lease reserved to the LLC "the right of ingress and egress [as to University Village] at all times." (Punctuation and emphasis omitted). The lease provision cited by the trial court reserves that right to the Board of Regents, not the LLC.

8

Third, the trial court erroneously determined that the LLC's retention of possession and control of the property may be shown by lease provisions (a) limiting the Board of Regents' use of the property to educational and administrative functions and (b) prohibiting any uses of the property that would impact the LLC's insurance premiums before allowing it to obtain any necessary endorsements. Indeed, Lewis has not shown that either provision differs significantly from standard residential leases, which commonly limit the use of property to residential purposes and prohibit dangerous activities on property, despite the surrender of possession and control to the tenant. See, e.g., *Lemontree Properties v. Samples*, 357 Ga. App. 410, 413 (1) (c) (850 SE2d 849) (2020) (one does not lose one's status as an out-of-possession landlord by retaining a right of approval over residential tenants' pets). And it would impermissibly vitiate the limited liability under OCGA § 44-7-14 if a property owner could not reasonably limit the permissible uses of leased property without subjecting itself to more expansive liability under OCGA § 51-3-1.

Fourth, the trial court erroneously concluded that possession and control also may be shown by lease provisions requiring the LLC to provide janitorial, garbage removal, and pest control services; "keep and maintain in good order and repair" the premises; and enter the premises at reasonable times to inspect and maintain the

9

property; as well as a clause requiring the Board of Regents to obtain LLC approval for any improvements. But those clauses — which relate to the provision of services and limitations targeted at protecting the LLC's ownership interest (as distinguished from any potential possessory interests) — do not establish possession or control. And none are significantly different from provisions one would expect to see in many business leases, despite the landlord's surrender of possession and control to the tenant. See, e.g., *Starks*, 361 Ga. App. at 411 (1) (the landlord's obligation "to service and maintain the property" and related right to enter for such purposes do not establish dominion and control and are not "inconsistent with a full surrender of possession of the property"); *Lake*, 306 Ga. App. at 319 ("Landlords still fully part with possession of leased premises when they retain limited entry or inspection rights for landlord-related purposes."); *Webb v. Danforth*, 234 Ga. App. 211, 212 (505 SE2d 860) (1998) ("A landlord's retention of the right to enter, inspect and repair is not inconsistent with a full surrender of possession to the tenant."); *Asbell v. BP Exploration & Oil*, 230 Ga. App. 700, 703 (1), 707 (5) (497 SE2d 260) (1998) (the owner of two gas stations "fully parted with possession and control of" the properties in favor of dealers operating the businesses, notwithstanding the owner's imposition of "various building, construction and/or operational requirements as a means of

10

permitting [it] to achieve a certain level of quality and uniformity within its system," including the right of approval over remodeling).

Lewis maintains that our decision in *Stelly v. WSE Property Mgmt.*, 350 Ga. App. 627 (829 SE2d 871) (2019), bars summary judgment here. But that decision is distinguishable, as it involved the liability of an apartment complex property manager who maintained an office on the premises and had the authority to act to prevent "inherently hazardous" conditions such as the ramp on which the plaintiff tripped and fell. Id. at 627-628, 631-632 (1) (punctuation omitted). Indeed, we distinguished *Stelly* on that basis in *Starks*, 361 Ga. App. at 412 (1), which concerned a scenario much more analogous to the facts in this case, see id. at 407-408, 409-414 (1).

Lewis further asserts that possession and control are shown by lease provisions requiring the LLC to provide all utilities; make all necessary repairs; and comply with all applicable laws, ordinances, regulations, and codes. But as is the case with the provisions relied on by the trial court, none of these clauses — which concern the provision of various routine services and general legal compliance — establish any degree of possession or control that would subject the LLC to liability under OCGA § 51-3-1. See *Starks*, 361 Ga. App. at 411 (1); *Asbell*, 230 Ga. App. at 703 (1). Finally, Lewis's claim that the lease requires the LLC to take steps to protect the

11

premises against hazardous materials misrepresents the lease, which gives the LLC "the right, *but not the obligation*, to take whatever action with respect to any such Hazardous Materials that it deems reasonably necessary to protect the value of the Premises or the property in which the Premises are located." (Emphasis supplied.)

For the above reasons, the trial court erred when it concluded that disputed issues of material fact remain regarding whether the LLC retained sufficient possession and control of the University Village apartments to be liable for Donald's tragic shooting death under premises liability principles. We therefore reverse its ruling in that regard.

2. The defendants further contend that the LLC's status as an out-of-possession landlord also defeats Lewis's nuisance claim against it. We agree.

"[A]n out-of-possession landlord cannot be held liable for creating or maintaining a nuisance on the premises." *Starks*, 361 Ga. App. at 414 (2); accord *Asbell*, 230 Ga. App. at 708 (7). Our ruling in Division 1 that the LLC is an out-of-possession landlord therefore is fatal to Lewis's nuisance claim. See *Starks*, 361 Ga. App. at 414 (1) (the landlord could not be held liable on the plaintiffs' nuisance claim because it "fully parted with possession of" the property); *Asbell*, 230 Ga. App. at 708

(7) (same). Thus, the defendants also were entitled to summary judgment on this claim.

3. Finally, the defendants maintain that the Foundation similarly cannot be liable for Donald's death because it also did not possess or control the property. We agree that no claims lie against the Foundation.

Nothing in the record suggests that the Foundation — which is named as a defendant only because it is a member of the LLC — exercised any more possession or control over the premises than the LLC. It therefore also was entitled to summary judgment on each claim against it, for the reasons stated in Divisions 1 and 2.

*Judgment reversed. Doyle, P. J., and Gobeil, J., concur.*